HUDSON RIVER WATER POWER CO. v. GLENS FALLS GAS &
ELECTRIC LIGHT CO. et al.

(Supreme Court, Appellate Division, Third Department. January 6, 1904.)

1. PLEADING—COUNTERCLAIM—DEMURRER—STATUTORY GROUNDS.

Under the express provisions of Code Civ. Proc. § 495, an objection to a counterclaim that it is "not sufficient in law on the face thereof" is not a ground for demurrer.

2. SAME—FAILURE TO DEMUR—WAIVER.

An objection on appeal that a counterclaim was improper as not authorized by Code Civ. Proc. § 495, enumerating the grounds of demurrer to a counterclaim, is not available where the point was not raised by demurrer.

3. ELECTRIC POWER—SALE—CONTRACT—ASSIGNMENT—KNOWLEDGE OF SELLER—ESTOPPEL.

The assignee of the rights of one entitled to be furnished electric power by a power company gave notice of the assignment to the power company, paying at the time one of the installments due for the power. Thirty days later the power company was notified that the assignee was about to purchase apparatus for transforming electric power, to which the power company made no objection. A few days later another installment was paid, and a demand made for the power; the apparatus having been installed. The power company had written several letters to the assignee recognizing the assignment. Held, that the power company was estopped from objecting to the assignment in the absence of anything in the contract between it and the assignor forbidding the same.

4. SAME—ASSIGNMENT OF CONTRACT.

A contract for the sale of electric power to a company manufacturing cement provided in one clause thereof that the benefit of the contract should inure to the "successors and assigns" of the cement company. There were provisions in the contract especially applicable to the use of electricity by the cement company, and it was provided that the power should not be used for the manufacture of pulp or paper or fiber of any kind. Held, that the purchaser had the right to assign the contract to one who intended to use it for the purpose of furnishing electric power.

5. SAME—CONTRACT—ARBITRATION.

Where a contract for the sale of electric power provided that any question as to the intent and meaning of the contract should be submitted to arbitration, a controversy as to the right of the purchaser to assign the contract, resting not only on the provision of the contract, but on the acts of the seller as constituting a waiver of rights which the purchaser might otherwise have had, was not within the provision as to arbitration.

Appeal from Special Term, Saratoga County.

Action by the Hudson River Water Power Company against the Glens Falls Gas & Electric Light Company and another. From a judgment sustaining the plaintiff's demurrer to the amended counterclaim in the answer of the Glens Falls Gas Company (84 N. Y. Supp. 62), such company appeals. Reversed.

Plaintiff is a domestic corporation owning and controlling a dam in the Hudson river, from which it obtains and furnishes electric power. The defendant company, the Glens Falls Portland Cement Company, is a corporation engaged in the manufacture of cement in the village of Glens Falls. The defendant appellant is a domestic corporation engaged in furnishing electric power and in furnishing gas and electric light in and about the village of Glens Falls. For convenience, the defendant appellant may be called the "Light Company," and the codefendant the "Cement Company," and the plaintiff the "Power Company."

Upon the 7th day of February, 1901, the plaintiff and the cement company entered into an executory contract for the sale of power by the former to the

latter. The contract covered a period of five years. The minimum supply was to be 1,000 horse power, with an option to the cement company to take from time to time, as it decided, up to double that amount. The power was deliverable on the cement company's property. Payments were to be made by the cement company monthly, the minimum to be paid for in any event. The five-year term was to commence at a certain period when the power company's regular service was ready. The tenth provision of the contract reads: "Tenth. The cement company agrees, as a condition precedent hereto, that the electrical energy or power hereby sold and to be taken by it shall not be used or employed by it or its assigns during the continuance of this agreement for the purpose of manufacturing pulp or paper or fiber of any kind." The fourteenth provision of the contract reads: "Fourteenth. This contract shall inure to the benefit of and become binding upon the successors and assigns of the respective parties hereto." This five-year term was set in motion by virtue of a certain notification on October 1, 1902. On November 15, 1902, the cement company delivered to the light company, and the light company accepted, an assignment of this contract, "together with all the rights and privileges to which said cement company is now entitled or to which it may hereafter become entitled under and by virtue of said contract." Upon November 20, 1902, the light company notified the plaintiff of the assignment, sending to them a copy thereof, and upon that date paid the plaintiff the monthly installment of $1,875, which was accepted by the plaintiff. On December 16, 1902, the light company notified the plaintiff that it was about to install on the premises of the cement company certain motors and transformers of standard make purchased by it from a reputable maker, to wit, the General Electric Company, and guarantied by the manufacturer to have a power factor or efficiency as high as any obtainable in the market, all as provided in the second clause of the contract. The light company at the same time offered to the plaintiff an opportunity to test the same. On December 18, 1902, the light company notified the plaintiff that the apparatus aforementioned was actually installed on the premises of the cement company as provided in the contract, and was ready for operation, and demanded that plaintiff at once make the necessary connections and supply the power as provided in the contract. Opportunity was again afforded to the plaintiff to make the test mentioned in the contract. This apparatus cost the light company $5,000. On December 20, 1902, the defendant light company again duly paid the plaintiff $1,875, and plaintiff accepted the same, and at the time of this payment the light company again demanded performance of the contract on the part of the plaintiff. On December 23, 1902, after the plaintiff had several times written to the light company recognizing the assignment, and after the light company had made the two monthly payments to the plaintiff, which had been accepted, and after it had purchased expensive apparatus, the plaintiff notified the defendant light company that it objected to the assignment of the contract to the light company, and offered to submit the question of the assignability of the contract to arbitration. To that the light company replied that there was no question as to the true intent and meaning of any of the provisions of the contract upon the matter of its assignability, and that plaintiff's conduct with the light company during the 34 days prior thereto estopped it from raising any such question if there had been one. These facts are set up in the defendant's counterclaim, and upon them relief is asked, both legal and equitable. A demurrer by the plaintiff to this counterclaim has been sustained. From the interlocutory judgment sustaining said demurrer. the defendant light company has appealed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Taylor, Anderson & Seymour, for appellant.

Henry W. Williams (Richard Lockhart Hand, of counsel), for respondent.

SMITH, J. Plaintiff's objections to the counterclaim, as specified in the demurrer, are, first, that it is not sufficient in law upon the

face thereof; and, secondly, that facts are not therein stated sufficient
to constitute a cause of action.   The objection first made is not an
authorized ground of demurrer to a counterclaim within section 495
of the Code.   The contention upon this appeal that this is not a proper
counterclaim within the provisions of the Code cannot be here made,
because not specified in the demurrer.   The sole question, then, for
our determination is as to the sufficiency of the facts alleged in this
counterclaim as constituting a cause of action.   It is not necessary for
us to discuss whether that cause of action, if one be stated, be in law
or equity.   If any cause of action be therein stated, the plaintiff's de-
murrer must be overruled.

The determination as to the sufficiency of this counterclaim seems
to hinge upon the right of the light company secured under the
assignment from the cement company of November 15th.   The plain-
tiff claims that that contract was not assignable, and therefore that
the light company obtained nothing by the pretended assignment
thereof.   The defendant, however, contends, first, that the contract
was assignable as a matter of law; and, secondly, even though not
assignable without the consent of the plaintiff, nevertheless the plain-
tiff has by its acts estopped itself from objecting to such assignment,
and has accepted the defendant light company as the proper assignee
thereof.

In our view of the facts alleged in the defendant's counterclaim,
it is not necessary for us here to decide whether there be in this
contract any personal element which would give to the plaintiff the
right to insist that it would perform its contract only with the original
contracting party.   When this assignment was made upon November
15th, notice of the assignment was given, and a copy forwarded to
the plaintiff.   Together with this notification was sent by the defend-
ant light company a monthly installment due upon the contract,
which was accepted by the plaintiff.   Upon December 16th the plain-
tiff was notified that the defendant light company was about to spend
a large amount of money in reliance upon their assignment, and still
made no objection thereto.   On December 18th notice was given
that the apparatus was actually installed, and a demand was made for
power from the plaintiff.   Upon December 20th the plaintiff, without
objection to the assignment, again received from the defendant light
company another monthly installment of $1,875, and it was not until
December 23d, after the plaintiff had written several letters recogniz-
ing the assignment, that the plaintiff assumed to offer any objection
to the assignment, or made any question of the rights of the defendant
light company thereunder.   After the receipt of the money of the
light company in payment of the installments upon said contract,
with full notice of the assignment thereof, and after having per-
mitted the light company to spend upwards of $5,000 in placing ap-
paratus upon the premises of the cement company under the con-
tract, the plaintiff, under well-recognized principles of equity, must
be held to be estopped from making objection to this assignment on
the ground of any personal element which may be deemed involved
in the performance of the contract, and must be held to have accepted
the light company as the party entitled to the contract which it had

executed originally with the cement company, unless there be something in the nature of the contract which renders impracticable its performance with this assignee.

At the time of the execution of this contract it was primarily contemplated that the power should be furnished to the cement company for its use. There are provisions in the contract especially applicable to such contemplated use. I am unable to find any provision of the contract, however, which, by fair interpretation, cannot be adjusted to the use of any assignee of such power. I apprehend if the cement company had closed, and another manufactory had been substituted upon its grounds, whose business in no way rivaled the business of the plaintiff, no question would be raised as to the assignability of the contract, or as to such interpretation thereof as to make it adaptable to the purposes of the substituted factory. If, after the words "cement company," wherever the same appear in that contract, should be inserted the words "or its assigns," the contract would still be intelligible and consistent. Such words have, in effect, been inserted by the parties to the contract in the fourteenth provision thereof, which provides that the benefits of the contract shall inure to the successors and assigns of the cement company. I can see no reason for limiting the effect of this provision to the successors of the cement company in the cement business. No such limitation is expressed in the contract, and it could only be justified by the impossibility of its performance with some other party than a cement company. This view of the contract is also somewhat enforced by the exception in the contract that the power thus sold should not be used for the manufacture of pulp or paper or fiber of any kind. Even if we can go out of the record, and take the brief of the respondent in explanation of this provision, it still remains that by this exception is recognized the right of assignment of the power granted by the contract for other purposes.

The respondent further urges that in the counterclaim is shown a proposal of the plaintiff to arbitrate under the contract, which was refused, and therefore a breach of the contract, which would prevent a recovery by the defendant light company. The clause in question is an agreement to arbitrate "whenever any question shall arise as to the true intent and meaning of any of the provisions of this contract." Inasmuch as the right of the defendant light company rests not only upon the provisions of the contract, but also upon acts of the plaintiff as constituting a waiver of rights which plaintiff might otherwise be held to have under the contract, the controversy here is not such a controversy as is contemplated by this provision of the contract.

The interlocutory judgment should therefore, we think, be reversed, and the demurrer overruled.

Interlocutory judgment reversed, with costs, and demurrer overruled, with costs, with leave to the plaintiff to reply upon payment of costs of demurrer. All concur.