## ROEHM v. HORST et al.

### (Circuit Court of Appeals, Third Circuit. December 16, 1898.)

1. **CONTRACT WITH PARTNERSHIP—EFFECT OF DISSOLUTION.** •

    The dissolution of a partnership, and the assignment by the retiring member of his interest in a contract made by the firm to his co-partners, do not release the other party to such contract from the obligation to perform.

2. **CONTRACTS—RENUNCIATION—RIGHT OF ACTION FOR BREACH.**

    Where one party to a contract gives notice of his intention not to perform, the other is justified in treating such action as an anticipatory breach, and may sue for damages, without waiting for the time of performance to arrive, or making a tender of performance.

3. **MEASURE OF DAMAGES—BREACH OF EXECUTORY CONTRACT.**

    In an action for the breach of a contract to receive and pay for goods, brought before the time for delivery has arrived, the measure of damages is the difference between the contract price and the price at which it is shown that responsible parties would undertake to fulfill the contract on the part of the plaintiff.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action for breach of a contract for the sale and delivery of hops at intervals extending over five years. There was a judgment for plaintiffs (84 Fed. 565), and defendant brings error.

Samuel Dickson and Richard C. Dale, for plaintiff in error.

Frank P. Prichard, for defendants in error.

Before ACHESON, Circuit Judge, and BUTLER and KIRKPATRICK, District Judges.

KIRKPATRICK, District Judge. In August, 1893, Paul R. G. Horst, E. Clement Horst, and Louis A. Horst, trading as Horst Bros., entered into a contract with John Roehm, the defendant below, for the sale of 1,000 bales of prime Pacific Coast hops, to be delivered at various dates in the future, at a uniform price of 22 cents per pound. Of the whole quantity, 600 bales had been delivered, accepted, and paid for at the contract price, so that in July, 1896, there remained undelivered 400 bales. These were deliverable at the rate of 20 bales per month during each month from October, 1896, to July, 1898, both inclusive; excepting, however, from said period, the months of August and September, 1897, when no deliveries were called for. The record shows that this contract was the result of one negotiation, and provided for a supply of hops for five years. Ten separate papers were drawn, each covering a period of five months, or one season. They all bear the same date; are similar as regards the quantity of hops to be delivered, and the price to be paid. They differ only in the time of delivery, and the year's crop from which delivery was to be made. In June, 1896, the firm of Horst Bros. was dissolved by the retirement of Paul R. G. Horst. He assigned his interest in the Roehm contract to the remaining partners, who continued the business under the same firm name. Roehm, the defendant below, was notified of this dissolution of the firm, and of the transfer of Paul R. G. Horst's interest in the contract to its successors. He thereupon gave notice to the firm that he

considered his contract canceled thereby. Subsequently the firm of Horst Bros. advised the defendant of their ability and willingness to perform the contract, and, under date of September 4, 1896, wrote Roehm as follows:

"Dear Sir: Will you please write us whether you wish us to ship the hops, under your contract, direct to your city? The contract calls for delivery in New York, and, as we ship direct from this coast, we can ship to either city at same rate. Consequently there will be a saving to you of freight, if we ship to your city direct from here. Awaiting your reply, we are,
"Very truly, Horst Brothers."

To this letter Roehm replied, under date of September 14, 1896:

"Dear Sirs: In response to your letters dated 3d & 4th inst., state that, before shipping me any hops, always send me samples, from which I can select lots, the same as you have been doing in the past.
"Very truly, John Roehm."

On October 9, 1896, Horst Bros. advised Roehm of 20 bales of hops per October delivery, as called for by the contract, which Roehm, by telegraph, refused to receive, and, as supplementary thereto, sent the following letter, dated October 24, 1896:

"Gentlemen: Yours of October 9, inclosing bill of lading and bill of particulars per twenty bales of hops forwarded me under the terms of contract of August 23, 1893, was received, and I have wired you that I decline to receive the same. I notified you under date of June 27, 1896, that owing to the dissolution of the co-partnership with which I originally contracted, and the fact that this firm was no longer in existence, I considered my contract at an end, and will make arrangements for purchasing my supplies elsewhere. I am advised that I am under no obligations by that contract to accept supplies from you. If you desire to bill these goods at the current market rate, under a new contract, I will accept them, if, upon inspection, they are of the quality desired; otherwise, they will remain at the freight station, subject to your order.
"Very truly, yours, John Roehm."

No further efforts were made by Horst Bros. to make delivery under the contract, but in January, 1897, this suit was begun by all the original parties thereto, to the use of the firm as at present constituted, to recover damages for its breach. Judgment was rendered in favor of the plaintiffs.

It was asserted by the defendant upon the trial below that his contract with Horst Bros. was annulled by the dissolution of that firm, and the assignment by one partner to his co-partners of his interest therein. To this proposition we cannot assent. The contract was entered into by Roehm with the plaintiffs jointly, not with either of them separately. The dissolution of the firm in no way affected the obligations of any of the parties. The retiring member, Paul R. G. Horst, was, notwithstanding his withdrawal, answerable to Roehm for the faithful performance of the contract; and in like manner Roehm was still bound to the remaining members of the firm. The same principle which would have permitted Roehm to compel the performance of the contract on the part of the plaintiffs, either in their partnership or individual capacities, enables them, in the same way and to the same extent, to require him to observe the obligations entered into on his part. As was said in the case of Lumber Co. v. Bradlee, 96 Ky. 494, 29 S. W. 313, where a corporation had a contract to sell

certain lumber to a firm for cash, and refused to deliver after the retirement of one member of the firm:

"It seems, the transfer was made upon the dissolution of the firm of Bradlee & Wiggins; the benefit of that contract falling to the latter, in the division of the assets. But as Bradlee did not, and could not, in virtue of either the dissolution, or transfer to Wiggins, release himself from the undertaking by the firm to pay the defendant for lumber upon delivery, we do not see how the latter was affected, nor upon what principle it could be released from its undertaking. If it was, then the dissolution of a partnership would in all cases put an end to each mutual and reciprocal contract the firm may have entered into, however profitable or advantageous. But it does no more take away the rights of individual members, than it releases him from obligation to perform."

To the same effect are Fish v. Gates, 133 Mass. 441; Holmes v. Shands, 27 Miss. 40.

The cases upon which the defendant below relies will be found, upon examination, to relate to a different state of facts from those which the record in this case discloses. In some of them the legal plaintiff, as in Boulton v. Jones, 2 Hurl. & N. 564, and Ice Co. v. Potter, 123 Mass. 30, or the legal defendant, as in Humble v. Hunter, 12 Q. B. 310, was a stranger to the contract; and the court very properly said it to be the law, "if a person intends to contract with A., B. cannot give himself any rights under it," and that "B. could not be bound by a contract to which he was a stranger." Clearly, these rules have no application here, where all the parties to the suit are the same who made the contract. The other cases referred to in this connection by the defendant's counsel relate to a class where reliance has been placed upon the judgment or ability of one of the parties to the contract to perform a particular work. This reliance must be apparent upon the face of the contract or from the nature of the employment. The contract set out in this record is one of ordinary character, for the mere sale and delivery of goods. Not only does it fail to show that any reliance was placed by the vendee upon the skill or judgment of any of the vendors, but it, in express terms, provides for the contingency of disputes arising with respect to the quality or condition of the hops which were the subject-matter of the contract. If proof were needed that the defendant did not intend to be guided, in his determination of the quality of the hops furnished, by the opinion of any of the contracting parties, it might easily be gathered from his testimony in the cause, and his letter of September 14, 1896, in which he says, "Send me samples from which I can select lots, the same as you have been doing in the past." The memoranda of agreement entered into between the parties, and signed August 23, 1893, were regarded by the parties as but evidences of a single contract. They were so construed by the court below, and we think properly. This contract had been partially performed, and the refusal of the vendee to receive deliveries of goods under it was most clear and unequivocal, and indicative of his intention to repudiate it. There can be no mistaking the meaning of the terms employed by him in so doing. "I am advised," he says, "that I am under no obligation by that contract to accept supplies from you." "If you desire to bill these goods * * * under a new contract, I will accept them; * * * otherwise they

will remain at the freight station, subject to your order." This was a sufficient evidence of defendant's renunciation of the contract, in which the plaintiffs acquiesced by the bringing of this suit. The refusal to accept was not limited to the particular shipment of October, 1896. It was general, as to the whole contract, and founded upon the assertion that the contract of August 23, 1893, by the dissolution of the firm of Horst Bros., was ended, and that the defendant was not bound by it, but was free to get his supplies elsewhere. Under these circumstances, the plaintiffs were justified in accepting these declarations as an anticipatory breach of the unperformed provisions of the contract, and were not obliged to make further tenders, nor wait until the expiration of the time for making the latest deliveries under it, before bringing their suit. While the supreme court of the United States, in Dingley v. Oler, 117 U. S. 490, 6 Sup. Ct. 850, declined to affirm the doctrine of Hochster v. De La Tour, 2 El. & Bl. 678, the general consensus of opinion of courts of concurrent authority is in accordance therewith. In the recent case of Marks v. Van Eeghen, 30 C. C. A. 208, 85 Fed. 853, Wallace, C. J., after a careful review of all the authorities, in delivering the opinion of the circuit court of appeals for the Second circuit, says:

"In view of the overwhelming preponderance of adjudication, we think it must be accepted as settled law that where one party to an executory contract renounces it, without cause, before the time for performing it has elapsed, he authorizes the other party to treat it as terminated, without prejudice to a right of action for damages, and, if the latter elects to treat the contract as terminated, his right of action accrues at once."

That the right to begin an action carries with it the right to obtain judgment needs no argument. The only question is, what shall be the measure of damages in cases of this nature? In an action upon an ordinary contract for sale and present delivery, the damage is measured by the difference in price, as fixed by the contract, and the market value at the time of delivery; but that this is not a general, invariable rule, is apparent from the fact that it cannot be made to serve as a measure in cases like the one at bar, where there is need for an immediate ascertainment, though the delivery, by the terms of the contract, was not to be made until after the rendition of the judgment. The rule was, no doubt, adopted because, in cases where applicable, it furnished the best means by which compensation might be made to the party injured. Where, however, from the nature of the case, other means must be employed, the courts do not hesitate to adopt a different rule. Thus, in Hinckley v. Steel Co., 121 U. S. 264, 7 Sup. Ct. 875, where a contract was made for steel rails of a particular kind, which the plaintiffs were prevented from manufacturing and delivering by the misconduct of the defendant, the court held that the "proper rule of damages was the difference between the cost per ton of making and delivering, and the contract price." The basis of the recovery was said to be the gain which the plaintiffs would have had, if permitted to complete the contract. The damages of the plaintiffs in this case should be assessed upon the same principle,—that of the gain there was to him in the contract at the time. The best means of finding this gain was by learning the difference between the price for hops

deliverable according to the terms of the contract, and the price at which responsible parties in the market were willing to assume similar liabilities. The objection on the part of the plaintiff in error, that he is entitled to the benefit of the market at each due date of delivery, is not tenable, nor can any weight be attached to the suggestion that by this means the plaintiffs get the use of the money before the date called for by the contract. By his own acts he made necessary an antecedent ascertainment of the damages, and is bound to accept the situation caused by his own wrongdoing. Mining Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876. The record shows at what price such subcontracts as are above referred to were obtainable, and judgment was rendered in accordance therewith. It must be affirmed.