GALVESTON, H. & S. A. RY. CO. et al. v. JOHNSON & JOHNSON et al.

(Court of Civil Appeals of Texas. Dec. 21, 1910. On Motions for Rehearing, Jan. 25, 1911.)

1. CARRIERS (§ 222*) — CARRIAGE OF LIVE STOCK — RIGHT OF ACTION — ASSIGNEE OF CONSIGNOR.

Where a shipper of live stock sold the shipment to plaintiff, agreeing to deliver the live stock at destination, pay the expenses, and stand the loss of weight on the live stock, the purchaser to pay a fixed sum per hundredweight for their gross weight at destination, plaintiff had a right of action against the carrier for loss resulting from a fall in the market price of stock after the time they would have arrived at destination, but for a negligent delay in transportation; the assignor being entitled to recover for a resulting loss in weight of the cattle.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 952; Dec. Dig. § 222.*]

2. CARRIERS (§ 228*)—INJURY TO LIVE STOCK —EVIDENCE.

In an action against carriers of live stock to recover damages for loss in weight due to negligent delay in transportation, evidence *held* sufficient to support a finding of damage from shrinkage in the value of the stock.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 228.*]

3. INDEMNITY (§ 15*) — CARRIAGE OF LIVE STOCK—EVIDENCE—CONNECTING CARRIERS.

In an action against carriers of live stock for damages from delay in transportation, evidence *held* sufficient to sustain a judgment over in favor of the initial carrier against one of the connecting carriers.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 44; Dec. Dig. § 15.*]

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERRORS—REFERENCE TO RECORD—PROPOSITION UNDER ASSIGNMENT.

In an action against connecting carriers of live stock to recover damages caused by delay in transportation, defendants requested a charge that the jury, if they found for plaintiffs, should state in their verdict which defendant or defendants they found against the amount found against each defendant, and should state in separate items whether the damage found was for loss of weight, decline in market value, or injury to the cattle other than loss of weight. On refusal of this charge, the proposition under this assignment was that defendants carried the cattle as independent carriers, and were neither partners nor joint tort-feasors, and were entitled upon request to have the damages apportioned. *Held*, that the requested charge has no reference to the recovery or apportionment of damages between the defendants; hence that the proposition was not germane to the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

5. CARRIERS (§ 230*) — CARRIAGE OF LIVE STOCK — INSTRUCTIONS — DELAY IN TRANSPORTATION.

In an action against carriers of live stock for damages alleged to be due to their negligent delay in transportation, a charge that permits the jury to deduct from the gross time of transportation the time necessary to feed the stock twice, there being evidence that, counting necessary and usual stops, the trip would have required but one feeding of the cattle, is properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. § 230.*]

6. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

In an action against connecting carriers of live stock for damages caused by delay in transportation, a requested charge that defendants were not required to dispatch the live stock by special train if there was less than a train load, in the face of evidence that the 10 cars in the train constituted a train load, was properly refused, as being on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–466; Dec. Dig. § 194.*].

7. CARRIERS (§ 230*) — CARRIERS OF LIVE STOCK—ACTIONS—INSTRUCTIONS.

In an action by a shipper of cattle and his assignee against the carriers for damages on account of delay in transportation, where the evidence tended to show that there was a necessity for only one stop to feed and water the cattle, and that a second stop was the proximate cause of the delay, an instruction that would have permitted the jury to exclude all reasonable time consumed for such purpose, including both stops, was properly refused.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. § 230.*]

8. APPEAL AND ERROR (§ 730*)—ASSIGNMENT OF ERROR — SPECIFICATION OF ERROR — INSTRUCTIONS.

An assignment of error to the refusal of an instruction, which does not state that there was evidence to warrant the giving of the instruction, or what evidence was relied on as supporting the assignment, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. § 730.*]

9. CARRIERS (§ 227*) — CARRIERS OF LIVE STOCK—ACTIONS—PLEADING—ISSUE, PROOF, AND VARIANCE.

A petition in an action against carriers of live stock alleged that the initial carrier received the live stock for transportation from Sabinal, Tex., to National Stockyards, East St. Louis, Ill., for delivery there to a designated assignee, and the contracts introduced in evidence showed an agreement to transport the live stock, waybilled to East St. Louis, to New Orleans, the end of the initial carrier's road, to be there transferred to a connecting carrier for transportation to the same assignee named in the petition; and the contracts in evidence showed the same consignee and related to the same cattle and cars. *Held*, that there was no material variance between the contracts pleaded and those offered as proof, and that there was nothing in the manner of alleging the contracts calculated to mislead the defendants into mistaking the plaintiff's cause of action.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 956; Dec. Dig. § 227.*]

10. CARRIERS (§ 180*)—INTERSTATE COMMERCE —STATUTORY PROVISIONS—INSTRUCTION.

Under Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1164), the liability of an initial carrier is the same whether its contract as issued reads to the end of its own line or to a destination over the lines of connecting carriers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 815–828; Dec. Dig. § 180.*]

11. APPEAL AND ERROR (§ 1066*)—HARMLESS ERROR—INSTRUCTIONS.

A plaintiff's cause of action against a carrier of live stock was based solely on the loss or decline in market value, owing to delay in transportation, and at the trial there was evidence of the bad appearance of the cattle on

arrival, and the verdict for the plaintiff was in excess of the difference of the market value. A charge was given authorizing recovery for loss or decline in value, and also for the bad appearance of the cattle on arrival. *Held* that where it did not affirmatively appear that loss or decline in value, as claimed in the petition, was the only element of damage that entered into the verdict, the charge given was reversible error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

12. CONSTITUTIONAL LAW (§ 302*)—DUE PROCESS OF LAW—REGULATION OF CARRIERS.

The interstate commerce act (Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), as amended by Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1164), giving a right of action against an initial carrier in interstate shipments for loss or injury to a shipment notwithstanding any contract to the contrary, is not invalid, as a deprivation of private property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 851–856; Dec. Dig. § 302.*]

13. CONSTITUTIONAL LAW (§ 246*) — EQUAL PROTECTION OF LAW—REGULATION OF CARRIERS.

The section as amended is not invalid as denying the equal protection of the law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. § 246.*]

14. APPEAL AND ERROR (§ 933*) — REVIEW — PRESUMPTIONS—ORDER GRANTING OR REFUSING NEW TRIAL.

Where the trial judge entertained a motion for new trial, it will be presumed that the motion was filed in time.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3773; Dec. Dig. § 933.*]

On Motions for Rehearing.

15. CARRIERS (§ 222*)—ACTIONS AGAINST CARRIERS OF LIVE STOCK—RIGHT OF ACTION.

An assignee of a consignment of live stock, the assignment providing that the shipper was to deliver the stock and stand expenses and loss in weight, and that the assignee should pay a fixed sum per hundredweight on the gross weight delivered, had no right of action against the carrier for damages merely for the bad appearance of the cattle on account of delay in arrival.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 952; Dec. Dig. § 222.*]

16. TRIAL (§ 60*) — EVIDENCE—PRELIMINARY PROOF.

A witness testifying in an action against a carrier to recover for loss of weight and for loss in market value of live stock on account of delay in transportation admitted that his testimony was partly from records, partly from his knowledge of the actual conditions, and, partly from his experience and observation as a railroad employé, and he did not indicate by his testimony that the records referred to were correctly kept or what part of his testimony was derived from each of the sources mentioned. *Held*, that the testimony was inadmissible in so far as it failed to verify the records, or to show the separate sources of the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 141–145; Dec. Dig. § 60.*]

Appeal from Uvalde County Court; T. M. Milam, Judge.

Action by Johnson & Johnson and Parr & Arnim against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for plaintiffs against the defend-

ants, except the Illinois Central Railway Company and another, with judgment in favor of the Galveston, Harrisburg & San Antonio Railway Company over against the other defendants, except the Illinois Central Railway Company and another. Defendants except. The Illinois Central Railway Company and another appeal. Affirmed in part and reversed as to plaintiffs Parr & Arnim.

Baker, Botts, Parker & Garwood, W. B. Teagarden, and G. B. Fenley, for appellants. Martin, Old & Martin, for appellees.

JAMES, C. J. The action was originally brought by Johnson & Johnson (and other nominal and immaterial plaintiffs) against the Galveston, Harrisburg & San Antonio Railway Company, the Texas & New Orleans Railway Company, Morgan's Louisiana & Texas Railroad & Steamship Company, the Illinois Central Railway Company, and the George R. Barse Live Stock Commission Company for damages to a shipment of cattle, shipped from Sabinal, Tex., consigned to the last-named company at East St. Louis, Ill. About the same time Parr & Arnim filed suit in the same court against the same defendants, except the Barse Company, for damages respecting the same shipment. The two actions were consolidated. Johnson & Johnson and Parr & Arnim joined in the second amended petition, upon which and a trial amendment the case was tried.

According to this pleading Johnson & Johnson alleged, in substance, that the Galveston, Harrisburg & San Antonio Railway Company was the initial carrier of said shipment; that, after the cattle had been loaded and the contracts issued, they sold the entire 10 cars, containing 248 head, to Parr & Arnim, delivered on the market at National Stockyards, Ill., at $4.40 per hundredweight for such weights and cattle as were delivered at destination. They alleged negligent delays in the transportation and bad treatment as the cause of the cattle losing flesh, and asked a judgment for the loss of flesh only, according to the market value of Saturday, June 20, 1908, it being alleged that reasonable dispatch would have had the cattle there in time for that day's market; alleging, also, that had the cattle been delivered at destination, as they should have been, in time to be sold on Saturday, June 20th, they would have weighed at least 50 pounds more than they did weigh when sold and 50 pounds more than they would have weighed on Monday following, and would have been worth $4.40 per hundredweight, and, there being 248 head which lost 50 pounds each, plaintiff Johnson & Johnson sustained damage in the loss of 12,400 pounds at $4.40 per hundredweight, or $545.60.

Parr & Arnim alleged, in substance, the assignment by Johnson & Johnson to them, after the shipment and after the execution

of the contract of shipment, which contract of assignment they stated as follows: That the former agreed to deliver the cattle to Parr at said National Stockyards where they had been consigned, to stand all expenses of transportation and care of cattle during transit, and the latter to receive and pay for only such cattle and weight of same as should be delivered at said destination, Johnson & Johnson to stand all loss, if any, by reason of cattle lost and loss in flesh, and to receive as compensation for the cattle delivered at said place the sum of $4.40 per hundredweight for the actual weight of same when so delivered; that Parr sold a half interest in the contract to Arnim. Then plaintiffs Parr & Arnim alleged that had the cattle been transported with reasonable diligence and dispatch, and not delayed and roughly handled as alleged, they would have reached said destination and market and been sold on Saturday, June 20th, and would have weighed as follows: 48 steers would have weighed on that day at least 49,130 pounds, and would have been of the reasonable market value of $4.40 per hundredweight, 50 steers would have weighed 44,200 pounds, and would have been of the reasonable market value of $4.10 per hundredweight, 50 steers would have weighed at least 45,560 pounds, and been of the reasonable market value of $4.10 per hundredweight, and 100 steers would have weighed 89,980 pounds, reasonable market value at $4.10 per hundredweight, making a total of $9,576.62, which they would have received but for the negligence of defendants, and that their weight and value were the same when sold as they would have been Monday, June 21, 1908, whereas on account of same they only weighed as follows, and brought the following prices: 50 steers weighed 44,200 pounds, and brought $3.90 per hundredweight; 50 steers weighed 45,560 pounds, and brought $4.10 per hundredweight; 48 steers weighed 49,130 pounds, and brought $4.30 per hundredweight; 100 steers weighed 89,980 pounds, and brought $3.85 per hundredweight—making a total of $9,168.58 that plaintiffs received therefor, which was the reasonable market value for the cattle when sold, and same on Monday, June 21st, by reason of which said Parr & Arnim have been damaged in the sum of $408.04.

The defendant Galveston, Harrisburg & San Antonio Railway Company interposed demurrers to plaintiffs' pleading, which were overruled. It pleaded general denial, and specially set up (2) that in the contracts it stipulated for limitation of liability to its own line and that there was no loss or damage on its line; (3) that the damage alleged, if any, arose from the vicious propensities of the cattle; (4) also, that the contracts provided that the cattle were not to be transported in season for any particular market, and were not bound to reach destination at any particular time; (5) that the contracts

stipulated that they should inure to the benefit of all connecting carriers; (6) that at New Orleans new contracts were made with the Illinois Central for transportation of the cattle to destination and thereby this defendant was released; (7) that plaintiffs' actions are based upon Act Cong. June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1909, p. 1164), amending section 20, Act Feb. 4, 1887, c. 104, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), and that this defendant carried the cattle to Houston, the end of its line, without damage or delay, and so delivered same to the Texas & New Orleans Railway Company, thus complying in full with its contracts, and is therefore not liable, but, if nevertheless it can be held liable, then said act is void, and that, if it is held liable for the fault or wrong of any of its codefendants, they are liable to it for such sums and prayed accordingly.

The Illinois Central Railway Company and the Texas & New Orleans Railway Company pleaded similarly, and in the main adopted the above answer.

By supplemental petition plaintiff. demurred specially to the answer in respect to the limitation of liability on account of the provisions of the amendment of June, 1906, known as the "Carmack Amendment." The demurrer was sustained.

The verdict was: "We, the jury, find for the plaintiffs Johnson & Johnson the sum of $505.50, and find in favor of the plaintiffs Parr & Arnim the sum of $179.17, both of said amounts against the Galveston, Harrisburg & San Antonio Railway Company. And we find in favor of the Galveston, Harrisburg & San Antonio Railway Company and the other defendants, and against the plaintiffs John Blanks, J. A. Millikin, C. M. Cullins, and G. H. Johnson. We also find in favor of the Galveston, Harrisburg & San Antonio Railway Company the said sums in the aggregate (the $505.50 and $179.17) and against the Texas & New Orleans Railway Company and Morgan's Louisiana & Texas Steamship & Railway Company. And we find in favor of the Illinois Central Railway Company." Judgment was entered accordingly.

The first assignment of error complains. of the refusal to charge the jury that Parr & Arnim having failed to show a right to recover a verdict should be returned against them. The propositions under this are (1) that they were strangers to the contract of shipment, and title to the cattle did not pass from them until they were delivered at destination, and, in fact, not until they had passed over the scales at the time of sale, after which it was shown without question there was no decline in their market price, the only element of damage that could in any event be claimed by them; (2) that the undisputed fact was that the shipment could not have reached destination in time for the Saturday, June 20th, market, and any delay that happened did not proximately cause loss

to Parr & Arnim, assuming that they were entitled to maintain the action set up by them for delay. We find there was testimony showing that, after the cattle were loaded and the contracts executed by the Galveston, Harrisburg & San Antonio Railway Company, Johnson & Johnson sold the shipment to Parr on substantially these terms: The former were to deliver the cattle in East St. Louis, pay the expenses, and stand the loss of flesh on the cattle, and the latter were to pay $4.40 per hundredweight for their gross weight at that place. They were Johnson & Johnson's cattle until they were delivered in East St. Louis and weighed up. The action on the part of Johnson is for the loss of flesh, or loss in weight, prior to the time it was alleged the cattle would have reached there but for the delay; and on the part of Parr & Arnim for the difference in what the cattle weighed on Monday and Tuesday following (they being sold by Barse on Tuesday) and what they would have weighed on Saturday had they been properly transported, and, according to their allegation, they suffered nothing by loss of weight, their loss being based solely on a difference in market values, alleging a higher market value for Saturday than the value which prevailed on Monday and Tuesday following. It is thus seen that the different plaintiffs were not suing for the same thing. Johnson & Johnson sue for the loss of the cattle in flesh, which under the contract with Parr & Arnim appertained to them, and the latter for the loss arising from a difference in values of the cattle as they would have received them between the time Parr & Arnim would have received them had there been no delay en route and the next market day. The propositions of appellant are overruled. Parr & Arnim were entitled to claim as above stated under their contract and assignment from Johnson & Johnson. Ry. v. Jones, 41 Tex. Civ. App. 327, 91 S. W. 611. There was testimony sufficiently indicating a depreciation in the values, and also that a loss in this respect was the consequence of the cattle not arriving on Saturday the 20th, and that the failure to deliver them there on that day and in time for that day's market was due to negligence. Upon these conclusions the second, third, and fourth assignments are overruled. This extends to and overrules the twenty-third assignment of error.

Under assignments 5, 6, 7, and 8, it is contended that there was no evidence, and, at any rate, none that was competent or sufficiently definite to enable the jury to arrive at a shrinkage in weight, due to the failure of the cattle to arrive in time on Saturday the 20th, and to plaintiffs having to keep same all that day and over Sunday for a later market, and that the judgment in favor of Johnson & Johnson is without facts to support, or is against the overwhelming weight of the evidence. We conclude that

there was sufficient evidence that such cattle shrank 20 or 25 pounds per day, and, at the rate of 25 pounds for two days, the verdict in favor of Johnson & Johnson is supported.

The ninth assignment makes the point that the judgment against the Texas & New Orleans Railway Company is clearly excessive; it being liable only for the results of its own negligence, and the evidence showing no more than two hours' delay on its line, and that this was not an unnecessary delay, and that by the undisputed facts the sum for which it might be liable was insignificantly small, and could not have exceeded one twenty-fourth of the judgment against it.

We find that there was testimony showing delays on the line of said defendant aggregating over six hours, and that this delay between Houston and its terminus, Lafayette, was the cause of the cattle being unloaded for feeding and watering at the latter place, and that otherwise the cattle could and would have been carried on to New Orleans within the 30-hour limit before being so unloaded, which, if done, would have enabled the cattle to be taken from New Orleans to destination within 30 hours, and dispensed with the necessity of their being again unloaded and held at Canton, Miss., by the Illinois Central, and that, therefore, the proximate cause of the shipment not reaching destination in time for the Saturday, June 20th, market, was the delay on the line of the Texas & New Orleans Railway Company. There is no complaint of the judgment by the defendant Morgan's Louisiana & Texas Railway Company, and its status is not considered.

The tenth assignment complains of the refusal of a charge which was, in effect, that, in case the jury found for plaintiffs or either of them, to state in their verdict which defendant or defendants they found against, the amount found against each defendant, and in the separate items what the damage found was for, whether for loss of weight, decline in market value, or injury to the cattle other than loss of weight. The proposition under this assignment is: "Defendants each carried the cattle as independent carriers. They were neither partners nor joint tort-feasors, and were in any event under the law entitled, upon request, to have the damages apportioned." The requested charge had no reference to recovery or apportionment of damages as between the defendant lines, hence the proposition is not germane to the assignment.

This disposes, also, of the eleventh.

The requested charge which is the subject of the fourteenth assignment is as follows: "You are further charged, gentlemen, that should you find and believe from the facts that the cattle were transported with reasonable speed and dispatch from Sabinal to Lafayette, and that upon arrival there the time limit of 36 hours to feed, water, and

rest the cattle was up, or about up, so that it was necessary to feed, water and rest the cattle there, then I charge you that the cattle could not, under the undisputed facts of the case, by ordinary care have been run to their destination without food, water, and rest once more, and, should you find under above instructions that it was proper to feed, water, and rest the cattle at Lafayette, then you will deduct from the gross time of transportation all time reasonably necessary to feed, water, and rest the cattle at Lafayette, as well as all time consumed for that purpose at Canton, Miss. (deduct it and such other time lost, if any, as you may allow as reasonable under other instructions given), from the gross time of transportation." The distance from Lafayette to East St. Louis did not warrant the court in assuming that the run could not with reasonable dispatch have been made within 36 hours, in view of testimony which showed that on several divisions the run, counting necessary and usual stops, exceeded what would be required to carry the shipment from Lafayette to destination within that period. The assignment is therefore overruled.

The fifteenth assignment complains of the refusal of a lengthy charge dealing with matters the defendants say they were entitled to have considered in arriving at the time reasonably required in moving the cattle to destination and matters excusing delays or stops in which charge it was expressly stated that they were not required to dispatch these cattle by special train over their lines if there was less than a train load of them. There were 10 cars in this shipment, and from the testimony, so far as pointed out to us in the briefs, that number of cars constituted a train load. Therefore the charge would have been on the weight of evidence in this respect at least.

The sixteenth complains of the refusal of this charge: "You are further charged that all time reasonably necessary to feed, water, and rest the cattle, including time reasonably necessary to load and unload, and all time consumed in changing engines and crews at division points, as well as all time consumed to take water and fuel, and to meet and pass trains, or for any other purposes, if any, that was reasonably necessary for any and all such purposes, cannot be considered by you in this case as negligent delay, but all reasonable time that the facts show was so consumed for any such purposes must be excluded from the aggregate time of transportation on each line." It was a contention of plaintiffs that only one stop for unloading and feeding, etc., was required between Sabinal and East St. Louis, and there was evidence warranting a finding that the stop for that purpose at Lafayette after the cattle had been out something over 30 hours, instead of going on to New Orleans within the 36-hour limit which might have been done, was responsible cause of their having to undergo another stop beyond New Orleans for that purpose. The above instruction would have told the jury that all reasonable time consumed for such purpose must be excluded, which would have included both stops.

The seventeenth assignment complains of the refusal of this charge: "You are further charged that, in estimating the rate of speed made and the time consumed by any one of the carriers, you will take into account the entire run, from one end to the other of that company's line, and average up the time and distance excluding reasonable time for stops and other necessary delays—that is to say, should you find that on one part of the line there was negligent delay, and should you further find that the same or any part of such delay was made up by extra good speed, this should be credited, and the entire run, from one end of the line to the other, should be averaged, and the question whether or not there was negligent delay thus arrived at." The brief in connection with this assignment does not state that there was evidence to warrant this instruction, nor what the evidence was which was relied upon as supporting it.

The eighteenth complains of the court admitting in evidence parts of the bills of lading because of variance. The bill shows that plaintiff offered in evidence five bills of lading of two cars, each of which were met with the objection that they were not the contracts sued on and described in the petition, in this: That the suit is based on contracts to carry the cattle through from Sabinal to the National Stockyards, Ill.; whereas, the contracts offered are contracts to carry no further than the end of the Galveston, Harrisburg & San Antonio Railway Company's line, or to New Orleans, La. In the amended petition, in the second paragraph, the allegation is that the Galveston, Harrisburg & San Antonio Railway Company received the cattle for transportation from Sabinal, Tex., to National Stockyards, Ill., and as the initial carrier issued its bills of lading or contracts of carriage for said cattle, which contracts were in the hands of defendants, who were notified to produce them, and in the third paragraph that after they had been so received by the initial carrier, and after it had issued its bills of lading or contracts whereby it agreed to transport said cattle from Sabinal to National Stockyards, Ill., Johnson & Johnson sold the cattle to Parr, and in the fourth paragraph that after the first-named carrier had received the cattle for transportation from Sabinal to National Stockyards, Ill., and had issued its bills of lading or contracts of carriage as aforesaid, it became its duty, and the duty of every defendant over whose line the cattle would have to be transported from Sabinal, Tex., to National Stockyards, Ill., as common carriers, to handle same with reasonable care and dispatch over their respective lines from

Sabinal to National Stockyards, Ill. In a trial amendment plaintiff alleged that the cattle were received by the Galveston, Harrisburg & San Antonio Railway Company on June 16th for transportation as alleged in the second amended petition and as the initial carrier issued its contracts for the transportation of said cattle under date of June 16, 1908, from Sabinal, Tex., to East St. Louis, Ill., for delivery to Geo. Barse Commission Company. The contracts, in so far as they are claimed to constitute a variance from said allegations, depend on the following portion thereof: "Executed at Sabinal Station 6/16, 1908. This agreement made between the G. H. & S. A. Ry. Co., party of the first part, and George S. and C. B. Johnson, party of the second part, witnesseth: That, for the consideration of the mutual covenants and considerations herein contained, said first party will transport for the said second party the live stock described below, and the parties in charge thereof as hereinafter provided, viz., cars, initials, and numbers of which are shown in margin, waybilled from Sabinal Station to East St. Louis, W. B. Series, L. T. T. Nos. 18 & 19, dated 6/16, 1908, said to contain —— head of cattle, from Sabinal Station on the line of said first party to New Orleans, La., station, the end of the road operated by said first party on the route over which such stock are waybilled, there to be delivered to consignee or transferred to the railway company over which said stock are waybilled for further transportation by said railway company, said stock being consigned to Geo. R. Barse Com. Co." The allegations were that as initial carrier the Galveston, Harrisburg & San Antonio Railway Company issued contracts of a certain date with reference to certain cattle for transportation of same to East St. Louis for delivery to George Barse Commission Company. The contracts introduced bore same date, related to same cattle and cars, showed that the shipment was waybilled from Sabinal to East St. Louis, consigned to Geo. R. Barse Commission Company, and that they were to be delivered to connecting carriers at New Orleans, the end of the Galveston, Harrisburg & San Antonio Railway Company's line; the only difference being that the contract was for the Galveston, Harrisburg & San Antonio Railway Company to carry to New Orleans. The contract contemplated and provided for transportation to East St. Louis, provided for delivering at New Orleans to next carrier for such transportation, and was in a sense a contract for transportation to East St. Louis, though defendant with a view to provisions attempting to restrict its liability to its own line undertook to contract on its part to transport to New Orleans. There was no material variance between the contracts as alleged and as introduced. Under the federal statute the liability of the Galveston, Harrisburg & San Antonio Railway Company to plaintiffs was the same whether its contract as issued read to New Orleans or to East St. Louis. Nor was there anything in the manner in which the contracts were alleged that was calculated to mislead defendant into mistaking the plaintiffs' cause of action. The assignment is therefore overruled.

The nineteenth is that the court erred in refusing to charge that as to the Texas & New Orleans Railway Company plaintiffs have all failed to show a right to recover, and therefore to find in favor of such defendant. The proposition is that "it appeared, as a matter of law, that no delay occurred on the line of the Texas & New Orleans Railway Company, and, if any, it could not have been cause of any damage to Parr & Arnim." This is overruled, having been sufficiently discussed.

The twentieth complains of certain testimony, concerning which no bill of exceptions appears on the record.

We come to the twelfth assignment of error, which complains of this charge: "If you should find a verdict in favor of Parr & Arnim, you will assess the damages, if any, at the difference in the market value, if any, per hundredweight of said cattle on the market at East St. Louis (National Stockyards), Ill., at the time they should have arrived at said market and in the condition they should have been in but for the negligence, if any, of the defendants who transported said cattle from Sabinal, Tex., to New Orleans, La., and their market value per hundredweight on the said market at the time they were sold, but in estimating the difference, if any, you will only estimate the damages, if any, by the deterioration, if any, in value on account of bad appearance, if any, and decline in market, if any, of the said cattle brought about by the negligence, if any, of the said defendants, and let your findings be separately made in your verdict as to plaintiffs Johnson & Johnson and Parr & Arnim, if you find for plaintiffs in either case." This charge is complained of because it is nowhere claimed in the petition that Parr & Arnim sustained any loss because of bad appearance of the cattle. The petition shows that the damage which Parr & Arnim claimed was solely from loss in value. The charge authorized recovery from that, and also for bad appearance of the cattle. There was evidence of bad appearance necessarily from the treatment some of the witnesses say the cattle received en route to New Orleans. The charge entitles defendants to have the verdict in favor of Parr & Arnim set aside, unless the evidence is such as to show that the inclusion in the charge of damages for bad appearance has not prejudiced defendants. The testimony on the values appears to have been that of witness Simcock, and, so far as the briefs show, this was the only testimony on the subject. His testimony was conflicting as to what the cattle would have brought if they

had been sold on Saturday, June 20th, at East St. Louis, and according to some of his statements the verdict in favor of Parr & Arnim is in excess of the difference of market value. It therefore does not affirmatively appear that loss in value was the only element of damage that entered into the verdict.

The twenty-first assignment, which claims that a charge should have been given which directed a verdict for the Galveston, Harrisburg & San Antonio Railway Company, is overruled.

The twenty-second is overruled, as in our opinion the federal act referred to and upon which plaintiffs' right to recover against the initial carrier is not unconstitutional, as in its effect taking its property for a private purpose, without compensation, without due process of law, and as denying it the equal protection of the law. The said act is sustained in all its provisions, and this leads to overruling of the twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, and twenty-eighth assignments. Ry. v. Piper, 115 S. W. 107; Ry. v. Crow, 117 S. W. 170; Ry. v. Wallace, 117 S. W. 169.

The appellants contend that several of the refused charges, if incorrect, entitled appellants to have their substance given by correct charges framed by the court. The charges were not of the character which operated as requests for a correct charge submitting an issue.

There is no merit in the suggestion of appellees that the motion for new trial was not filed on time. The trial judge, for reasons which do not appear, but presumed to have been sufficient, entertained the motion and overruled it.

The testimony so clearly exonerated the Illinois Central Railway Company from any negligence that the trial judge directed a verdict in its favor. The correctness of this instruction and verdict is not questioned on this appeal. Nor is the judgment complained of wherein it disposes of certain nominal plaintiffs.

We conclude that the judgment in favor of the Illinois Central Railway Company should be affirmed, and that the judgment in favor, of Johnson & Johnson against the Galveston, Harrisburg & San Antonio Railway Company, and the recovery of the Galveston, Harrisburg & San Antonio Railway Company over against the Texas & New Orleans Railway Company and Morgan's Louisiana & Texas Railroad & Steamship Company for the same amount and for costs should also be affirmed. And that the judgment in favor of Parr & Arnim should be reversed, and that portion of the case remanded for a new trial between them and the defendants except the Illinois Central Railway Company, and, further, that that part of the judgment which disposes of the nominal and immaterial plaintiffs J. A. Millikin, John Blanks, C. M. Cummins, and G. H. Johnson, the same not being questioned on this appeal, should be affirmed, and it is so ordered.

Affirmed in part. Reversed and remanded in part.

### On Motions for Rehearing.

The motion by Parr & Arnim is overruled, and in this connection it is advisable to state, in view of another trial, that, even if Parr & Arnim had claimed damages for bad appearance of the cattle, they would not have been entitled to recover for such item. Their cause of action would be for loss in value only, as this is explained in the main opinion.

Referring to the twentieth assignment of error, we find that the bill of exceptions was made a part of the record by agreement. The testimony objected to was subject to the objection that the witness admitted that it was partly from records, partly from his knowledge of actual conditions, and partly from knowledge derived by him from experience and observation as a railroad employé, without indicating what he had derived from one source or the other, nor did he indicate by his testimony that the records were correctly kept.

The motion of appellants is likewise overruled.