## DITTMAN v. MODEL BAKING CO.
### (No. 500–4310.)

(Commission of Appeals of Texas, Section B. April 15, 1925.)

**1. Appeal and error** ⊚⇒387(3)—**Filing appeal bond within time as to second notice of appeal held to perfect appeal.**

Where two notices of appeal are given, and a bond is filed too late as to 'first notice but in time as to a second notice, which is within time under Rev. St. art. 2084, and in view of articles 1610, 2099, the appeal is perfected in time, since first attempted appeal will be considered abandoned.

**2. Appeal and error** ⊚⇒387(3)—**Bond filed 20 days after notice, filed 2 days after judgment on a late motion for new trial, perfects the appeal.**

Under Rev. St. art. 2084, requiring notice of appeal 2 days after judgment overruling motion for a new trial, and bond filed 20 days after notice, and article 2023, requiring motion for new trial to be filed within 2 days after rendition of verdict, if term shall last so long, if not, before end of term, a bond filed within 20 days after notice, filed 2 days after judgment overruling motion for a new trial, is good, though the motion was filed more than 2 days after the judgment but before adjournment; the court having a discretion as to late motions (Rev. St. art. 2019).

**3. New trial** ⊚⇒119—**Court may, prior to adjournment, entertain motions filed after expiration of prescribed period.**

Trial court has discretion, prior to adjournment, to entertain motions filed after expiration of prescribed period, in view of Rev. St. art. 2019.

**4. Judgment** ⊚⇒341—**Trial court has complete control over its judgments during term in which rendered.**

Trial court has complete control over its judgments during term in which they are rendered.

**5. Appeal and error** ⊚⇒920(1)—**Trial court, considering a late motion, presumed to exercise a valid discretion.**

Trial court, considering a late motion, will be presumed to have validly exercised its discretion, in absence of showing to contrary.

**6. Assignments** ⊚⇒18—**Generally all contracts are assignable.**

Generally all contracts are assignable.

**7. Assignments** ⊚⇒19—**Contract with firm to install bake oven held not personal service contract, not assignable.**

Contract to construct bake oven for firm, which builder guaranteed for a period of 5 years against defects of any kind, *held* not a personal service contract, and assignable, in view of Rev. St. arts. 583, 584, by one partner to another on former's withdrawal.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by the Model Baking Company against Carl Dittman. From judgment of Court of Civil Appeals (266 S. W. 802), reversing and remanding judgment of dismissal of district court, defendant brings error. Judgment of Court of Civil Appeals affirmed.

Denman, Franklin & McGown, of San Antonio, for plaintiff in error.

Terrell, Davis, Huff & McMillan, of San Antonio, for defendant in error.

STAYTON, J. The Court of Civil Appeals at San Antonio, in an opinion by Associate Justice Smith, denied a motion to dismiss, which was based on the ground that the appeal bond was filed too late; and error is assigned to this ruling.

Upon the rendition, in the district court, of judgment for defendant on demurrers, plaintiff gave notice of appeal. Five days later he filed a motion for new trial. It was heard and considered, and, after argument of counsel, was overruled by the court on the ground that it was without merit. The plaintiff immediately gave a second notice of appeal, and 20 days later, but 25 days after the original judgment, filed an appeal bond, which recited all of the foregoing facts except the first notice.

[1-5] It was a case in which, as a predicate for appeal, the statute requires that notice be given "within two days after final judgment or two days after judgment overruling a motion for new trial," and that bond be filed "within twenty days" after that period. R. S. art. 2084. Another article requires motions for new trial to be filed "within two days after the rendition of verdict, if the term of court shall continue so long; if not, then before the end of the term." R. S. art. 2023. The practice of the bar and the decisions seem to construe "verdict" as here including "judgment" in its meaning. El Paso, etc., v. Kelly (Tex. Civ. App.) 83 S. W. 856. The law will be assumed but not decided to be that way. It will be noted that the period for filing appeal bond is not stated, as it could have been, within 24 days after verdict or judgment nor within 22 days after order overruling motion for new trial, but within 20 days after notice of appeal.

The fact that two notices of appeal were given is not material. In such a case, if the bond is filed too late as to the first but in time as to the second, the appeal will be considered to be perfected, providing the second is a valid notice; for, in that event, the first is abandoned and useless for any purpose, and the second is within the very words of the law. See R. S. arts. 2084, 2099, 1610; Robson v. Moore (Tex. Civ. App.) 166

S. W. 908; Sass v. Hirschfield, 23 Tex. Cr. App. 1, 56 S. W. 602.

The statute, as just stated, makes it a valid notice, if it is given within 2 days after judgment overruling a motion for new trial. The question arises, whether a judgment overruling such a motion fails, within the sense of this law, to have that character—the character it expresses—when the motion has been filed subsequently to the 2-day period. If so, the appeal bond in this case has come too late because based upon a notice of appeal that was without support; but otherwise it has been filed in time.

The statutes have always provided for the 2 days' limitation as to motions for new trial; but, both before and after the present revision, the decisions settle the law to be that any trial court has the discretion prior to its adjournment to entertain motions filed after the expiration of the prescribed period. George v. Taylor, 55 Tex. 97; R. S. art. 2019; Hargrove v. Cothran, 54 Tex. Civ. App. 5, 118 S. W. 177; Davis v. Zumwalt, 1 White & W. Civ. Cas. Ct. App. 319; El Paso, etc., Co. v. Kelley, 99 Tex. 90, 87 S. W. 660; Aldridge v. Mardorff, 32 Tex. 204; Puckett v. Reed, 37 Tex. 308; Winnsboro, etc., Co. v. Carson (Tex. Civ. App.) 185 S. W. 1003; Ishmel v. Potts (Tex. Civ. App.) 44 S. W. 615. Such a court has complete control over its judgments during the term at which they are rendered. Wood v. Wheeler, 7 Tex. 13. The limitation is directory upon the trial court, which is in better position than any other tribunal to judge, and usually to do so upon matters occurring before it and within its notice, whether or not particular delays in practice are unjust to its business or to litigants. See Clarendon Land Co. v. McClelland Bros., 86 Tex. 179, 23 S. W. 576, 1100, 22 L. R. A. 105; Glenn v. Dallas, etc., Dist., 114 Tex. ——, 268 S. W. 452. In the absence of a showing to the contrary, when the court has considered a late motion, it will be presumed that there has been a valid exercise of the discretion. Galveston, etc., Co. v. Johnson (Tex. Civ. App.) 133 S. W. 728. The point of jurisdiction over such a motion is reached and passed in arriving at the trial of it.

For these reasons, while a party, because of the statute, cannot, as a matter of right, have a tardy motion for new trial considered, and while it may be overruled in certain cases, even though considered, because of his delay or laches (Shirley v. Byrnes, 34 Tex. 625; Linn v. Le Compte, 47 Tex. 440), still, where the trial court does not disregard, strike out, or dismiss it, but instead, as here, takes jurisdiction over it, hears and considers it upon argument of counsel, overrules it on its merits, and recognizes and accepts it as a motion for new trial, the statutory predicate for a notice of appeal and consequent bond is both literally and substantially laid. The particular document may be a bad motion, but, since it

has been entertained and overruled as a motion for new trial, it is not a void one, and the law expressly allows the further procedure of an appeal to be predicated upon it. The application for writ of error relies mainly upon Gordon v. McCall (Tex. Civ. App.) 56 S. W. 219. Except in that case, which seems to confuse what is a meritorious motion with what is an entertainable one, it has not been held in this state, or in any decision cited here, that a late filing serves to invalidate the instrument as a motion for new trial or to prevent the judgment overruling it from being considered, as the statute says, a "judgment overruling a motion for new trial." The views that have been expressed, and the decision of the Court of Civil Appeals below, find support in two other decisions from the same court that passed upon both this and the Gordon Case, as well as in an opinion by Chief Justice Garrett of the Galveston court. Robson v. Moore (Tex. Civ. App.) 166 S. W. 908; G., H. & S. A. Ry. Co. v. Johnson (Tex. Civ. App.) 133 S. W. 728; Sass v. Hirschfield, 23 Tex. Civ. App. 1, 56 S. W. 602.

The other point in the case involves the question of whether the obligation declared on was subject to assignment. The district court considered that it was not, and therefore sustained demurrers to the petition. The Court of Civil Appeals held to the contrary.

In a statement of the pleading only the parts that relate to or are claimed to bear upon the point will be given. The contract was between Carl Dittman, oven builder, and Model Baking Company. The former agreed to construct a "Continues Bake Oven" at the place of business of the latter in San Antonio, using the brick and foundation of an old oven already there. In this work the Model Baking Company was to furnish all material and Dittman all labor. A price was named for the completed structure, the last installment payable after 15 days' trial. There followed the obligation which is the subject of this suit:

"Carl Dittman agrees to guarantee this oven for a period of five years, against defect of any kind, and repair same free of cost to the Model Baking Company."

The contract was signed as, "For Dittman" and "For Model Baking Company." The oven was built—the allegations continue —and was paid for. At the time of the deal the Model Baking Company was a partnership, but shortly after the completion of the oven one of the members relinquished all of his share, including his interest in this contract, to the other, who continued the business under the same trade-name as sole proprietor, but retained his former partner as employee, with the duty of performing the same services as before. The defendant knew when the contract was executed that

these services were only bookkeeping and outside work. To defendant's knowledge at such time, also, the plaintiff was the member of the business who controlled and managed it and would have everything to do with the oven. Owing to defects of design, this structure, after the change in the business, became useless, and, as it was a patent oven, not of the nature of those that were being constructed by San Antonio builders, plaintiff, unable to repair or rebuild it, had to replace it with other equipment. He sued for certain damages which he claimed arose on account of a breach by defendant of the defect and repair clause already quoted.

The point in issue is whether, because of the transaction between the partners, the allegations that have been stated showed that defendant was released of his liability under that clause.

[6, 7] He maintains that the obligation was not assignable in the manner alleged, because it involved a relationship of personal confidence and trust between him and the custodians and users of the oven, and the performance of personal services on his part in their behalf.

The general rule in modern times is that all contracts are assignable. Necessary exceptions, for which defendant contends, are readily seen and uniformly recognized. They arise on account of suretyship; technical guaranty; personal relationship, as between master and servant; personal skill or services, as in such a case, or that of an attorney for his client; personal terms of contract, as where a particular obligee is made the measure of performance, the agreement is to supply what he "needs," or he is to be "satisfied"; or confidence or trust, as from lender toward borrower—it being everywhere conceded that in such instances a man has a right to choose the individuals with whom he will deal. But, saving exceptions of these kinds, the full and unexceptional liberty of restricting alienation of contractual rights has given way, in so far as any case like the one at bar is concerned.

At one time no nonnegotiable obligation was assignable. But this was by reason of a state and stage of society and a dominant sentiment that have long passed. The doctrine has been abandoned even in theory. And decisions and legislation have in this respect kept abreast of progress in economic organization and commerce, to the extent that, while qualifications of the nature that have been mentioned are necessarily preserved, the rule of assignability has long ago become general and liberal. Carder v. McDermett, 12 Tex. 548; Winn v. Fort Worth, etc., Ry. Co., 12 Tex. Civ. App. 198, 33 S. W. 593; Jenk's Short History of Eng. Law, pp. 240, 294, 295.

And it has been held accordingly that strangers may become the owners of such obligations as to clean city streets; to keep railroad cars in repair; to erect and operate a mill (the duty being that of a corporation and not "necessarily" personal); to supply hops by a certain standard (in a case of relinquishment from one partner to his associates); to insure against fire (in two instances of like relinquishment, the ground of one being placed upon the fact that there had to be confidence in "each" partner); and to paint, paper, and whitewash a house. Devlin v. Mayor, 63 N. Y. 8; The British, etc., Co. v. Lea & Co., 5 Q. B. D., 149; Northwestern, etc., Co. v. Byers, 133 Mich. 534, 95 N. W. 529; Roehm v. Horst, 91 F. 345, 33 C. C. A. 550; West v. Citizens Ins. Co., 27 Ohio St. 1, 22 Am. Rep. 294; Hoffman v. Ætna Ins. Co., 32 N. Y. 405, 88 Am. Dec. 337; Galey v. Mellon, 172 Pa. St. 523, 33 A. 560; Janvey v. Loketz, 122 App. Div. 411, 106 N. Y. S. 690.

The liberal rule is followed, also, in Texas, and, with exceptions of the nature that have been stated, is here quite general. The statute is broader than usual, making assignable and enforceable, in the name of assignee, "any written instrument." R. S. arts. 583, 584. And the courts have held that such character of plaintiffs will be recognized in cases of contracts: To erect and at will to discontinue a pump on plaintiffs' land, take the water of their spring located on it, and supply them with domestic water; the statute having changed the common-law rule (H. & T. C. Co. v. Cluck, 31 Tex. Civ. App. 211, 72 S. W. 83, obiter); not to run a competing gin in a particular community as long as obligees were operating a gin there, where the transfer was from partners to a corporation, it being held that the change was not "substantial," and that the obligors could not object that they ought to be able to say who would require them to keep such a covenant (Malakoff Gin Co. v. Riddlesperger, 108 Tex. 273, 192 S. W. 530); to construct and operate a street railway extension for five years, in behalf of a land company owning a city addition there being "nothing in the contract to indicate that it was limited to the parties," no reason appearing why its obligations "could not be as well performed to any other owner of the lands mentioned as to the original land company," and the statute applying (Lakeview Land Co. v. San Antonio, etc., Co., 95 Tex. 252, 66 S. W. 766); to maintain a switch and furnish cars and freight service at a lumber mill, the company to be released of liability (which was the subject of the suit) for fires set, etc., there being "nothing in the subject of the contract indicating that one railroad company could not fulfill its obligations as well as another," the contract not evidencing "any relation of trust or confidence," and the statute applying (M., K. & T. v. Carter, 95 Tex. 461, 68 S. W. 159); to transport freight at certain rates for a partnership operating an ore furnace, where the assignment was to a corporation formed

by the same persons, there being by the contract no apparent intention to restrict the rights to the associates personally, the same furnace being continued, and such a change of ownership being held merely formal or technical (Himrod Co. v. Cleveland Co., 22 Ohio St. 451; approved in the Lakeview and Carter Cases); and to insure a stock of goods against fire where the insured was a partnership and one of the members relinquished his interest to the others, it being said by way of reason that the change was not material to the risk, that fluctuation in the membership of such an organization was a matter to provide against if objected to, and that a partner's interest in partnership property is entire as well as partial (Texas, etc., Co. v. Cohen et al., 47 Tex. 406, 26 Am. Rep. 298).

The obligation sued on in the present case presents no features of personal service, confidence, or trust or any other exception to the Texas statute or decisions or to the modern decisions of other jurisdictions, but, upon the authorities that have been noted, is assignable.

Under the contract set out in this petition, a builder, who can and evidently does ordinarily perform his undertakings by the labor of employees, obligates himself to construct a bake oven at a particular bakery in behalf of a business concern called the Model Baking Company, and to stand responsible for and repair any defects arising out of his performance of the contract during 5 years. No act or omission of obligees appears to be prerequisite to his duty, and on the other hand he does not appear to be responsible for anything beyond his own fault. He guarantees his own results. He is not to be a servant laboring for a master but in standing good is to be like any other defendant, and in making good is to be like any other independent contractor. He is a builder, not an artisan. And with respect to repairs he promises a certain object more especially than a service on any one's part.

It is contended that this obligation means to repair generally for 5 years, not only defects, but also the results of ill use. That might be a reasonable construction of the alleged contract, if the averments had shown that at the time of its execution the parties knew that such a structure could be kept in repair alone by this particular builder, or something else like that. But, assuming that the undertaking is to keep the oven in repair even as against the acts of obligees, it is not seen that in a case of this sort, where the latter were partners and are in this contract dealt with more essentially as a business and as a plant than as persons, the dropping out of one member should release the builder. It is not an instance where a stranger has been injected or become assignee, nor one where the business methods or the judgment of some particular individual appears to be in contemplation.

Again, it is not a case where affirmative personal services, as in the instance of a sales agency, are expected of each of the partners, and their combined efforts may be assumed to be better than those of one man alone. In such an agency it is not difficult to see that the number of representatives counts. But in an instance like the present the exact membership ought not to make a difference. As alleged, the Model Baking Company at the time of the contract was a partnership. Each partner in his relation to the property was a principal and might act alone. And, as shown in the Cohen Case, each held, and had right, not only by the half but by the whole of the partnership affairs. Through arrangement between the associates, attention to the business might at any time be divided—one devoting himself exclusively to one branch, such as the plant, and one to another, such as the office; or one could legally retire altogether from active management and attention, and leave that to the other. A person who stands good for the repair of partnership property cannot reasonably depend, in the absence of a contract to that effect, that any certain partner will do or desist from doing any particular thing concerning it; and, if he is to perform services for the association, he cannot, unless his contract anticipates it, place reliance upon which of the principals in person will deal with him. Consequently, in a case of that sort, as here, it is, on the face of the contract, not material that one of the partners has made it possible, by leaving the firm, for the other to have the same relationship with a third person that he might legally have had before.

As we consider that the allegations of the petition do not show that defendant was released, and that the judgment of the Court of Civil Appeals, both upon that branch of the case, and the question of jurisdiction, is correct, we recommend that it be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.