## Lakeview Land Company v. San Antonio Traction Company.

### No. 1068.   Decided February 24, 1902.

**1.—Corporation—Contract—Permit to Do Business.**

Corporations created in other States may purchase land or personal property in Texas, if authorized by their charters; such purchase, if made outside the State, did not constitute the "transaction of business within the State" prohibited, save after obtaining permit, by articles 745, 746, Revised Statutes, nor violate any law of Texas.   (P. 257.)

**2.—Contract—Assignment.**

A contract by a street railway company with a land company, to operate a line of street railway was assignable (Revised Statutes, article 308); and a purchaser from the land company, of its property and rights under such contract, could maintain an action for failure to so operate it.   (Pp. 257, 258.)

**3.—Case Stated.**

A land company created by the State of Maine, having obtained permit to do business in Texas and owning and developing a suburban addition, contracted with another company to build and operate a street railway line thereto; its property and contract rights were acquired, through conveyances made in the State of New York, by another Maine corporation, which did not then have, but afterwards obtained, a permit to do business in Texas. Held, that such assignee could maintain suit against the street railway company for its failure to operate the street car line as it had agreed.   (Pp. 253-258.)

Question certified from the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

*James Routledge, William Aubrey,* and *Keller & Williams,* for appellant.—The statute requiring a foreign corporation to have a permit

before transacting business within the State applies only to transactions within this State, and does not render void a business transaction had between said foreign corporation and an individual who is a citizen of another State, said transaction taking place entirely in another state. Rev. Stats., art. 745, 746; Security Co. v. Bank, 57 S. W. Rep., 23; Railway v. Davis 54 S. W. Rep., 383, 384; Sullivan v. Sheehan, 89 Fed. Rep., 247; Brin v. Wachusetts, 43 S. W. Rep., 295; Scruggs v. Mortgage Co., 16 S. W. Rep., 565.

Where it appears that the original party to the contract had a permit to do business in the State at the time of the making of the contract, the statute has no application and the assignee of such original contract may sue thereon.

The inhibition of Revised Statutes, article 746, only applies to the transaction of business in the State, and does not prevent a foreign corporation from enforcing property rights which it had acquired by a transaction outside of the State, and to enforce such rights by a suit it is not required to obtain a permit to do business in the State. Security Co. v. Bank, 57 S. W. Rep., 23; Sullivan v. Sheehan, 89 Fed. Rep., 247.

*Houston Bros.* and *R. J. Boyle,* for appellee.—The plaintiff, a foreign corporation, can not maintain its suit unless it pleads and proves that at the time the contract right was acquired or the tort or wrong committed it was authorized by permit to do business in the State of Texas. Until the permit was obtained, such foreign corporation had no legal existence in the eye of our law, and the permit thereafter had does not qualify it to prosecute for antecedent contract rights or torts theretofore committed. The authorization by permit was the birth of the corporation into our government, and theretofore it had no rights and could suffer no wrongs. Laws of Texas, 1889, pp. 87, 88; Rev. Stats., arts. 745, 746; Taber v. Loan Ass'n, 91 Texas, 94.

Land in Texas can not become the original subject of interstate commerce. It can only be acquired or held by grace of our laws, and it adds no force to the right or title to say that a foreign corporation, without any privileges in this State, stood across our border and there bought, held, and managed lands in Texas.

Where there is no privity of estate between the contracting parties, the agreement will not be considered as a covenant running with the land, and the assignee will not be bound by, nor have the benefits of, any covenants between the contracting parties. Spencer's Case, 5 Coke, 16; 1 Smith's Lead. Cases, 103; 2 Washb. on Real Prop., 3 ed., 261-2; Hurd v. Curtis, 19 Pick., 462; Am. and Eng. Enc. of Law, 2 ed., 135-6; Plymouth v. Carver, 16 Pick., 183; Nalle v. Paggi, 9 S. W. Rep., 205; Railway v. Smith, 72 Texas, 123.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Fourth Supreme Judicial District has certified to this court the following statement and question:

"Appellant sued the San Antonio Street Railway Company to recover damages alleged to have accrued by reason of the breach of a certain contract in which said street railway company for a valuable consideration had bound itself to construct and operate a line of street railway from San Antonio out to and through what is known as the Lakeview addition, a tract of land within the city limits then owned by the New England Land Company, of whom appellant was the vendee. It was alleged in an amended pleading, that during the pendency of the suit the charter of the San Antonio Street Railway Company had been forfeited by a decree of court, and appellee had acquired all its rights, property, and franchises, and assumed the payment of all its obligations and performance of its contracts. Appellee filed a general demurrer and special exceptions. The court sustained the general demurrer and two of the special exceptions, and appellant having declined to amend, the cause was dismissed.

"It was alleged in the petition that appellant is a private corporation duly incorporated under the laws of Maine, on November 20, 1893, and that a duly certified copy of its articles of incorporation was filed in the office of the Secretary of State of the State of Texas, and appellant was granted a permit to do business in the State of Texas on January 28, 1895. It was further alleged: 'That the New England Land Company was incorporated under the laws of the State of Maine on or about December 26, 1889, and duly filed with the Secretary of State of the State of Texas a duly certified copy of its articles of incorporation, and was granted a permit to do business in the State of Texas on, to wit, January 1, 1890.

" 'That plaintiff herein is a corporation duly organized and fully authorized to acquire and conduct a town site and to make all necessary contracts for the improvement or bettering of the same, and to make contracts for the purpose of improving or benefiting the said property, by the construction or the operation of a street railway through the same.

" 'That the New England Land Company is a corporation with like powers. That on or about December 28, 1893, plaintiff became the purchaser through mesne conveyances from the New England Land Company, and is now the owner of all of Lake View and Rosedale Park, save and except a few lots that had been sold to purchasers by the New England Company, and also the owner of Rosedale Park which formed a part of Lake View and all the streets, avenues, reserves, alleys, parks, rights of way, lakes, lots, and blocks into which said Lake View and Rosedale Park had been divided, and in addition to all the privileges, successions, rights, benefits, contracts, and franchises which had in any way accrued to the New England Land Company; and by mesne conveyances became the holder and owner of the contract hereinbefore described, and entitled to all of its benefits and all the rights in any manner which the property had acquired. That the immediate grantor of this plaintiff was Glen Raymond, a citizen and resident of the State of

New York; that the contract with said Glen Raymond for the purchase of said property above described was made and the deed therefor executed and delivered to this plaintiff in the State of New York; and that said Glen Raymond derived title thereto by mesne conveyance from said New England Land Company. That the plaintiff did not transact any business in the State of Texas or exercise its corporate functions until long after it acquired said property as aforesaid.'

"The contract is as follows:

" 'This indenture of the 11th day of August, 1890, is to evidence an agreement made between the San Antonio Street Railway Company, a corporation duly authorized under the laws of the State of Texas, hereinafter designated as the railway company, and the New England Land Company, a corporation duly authorized under the laws of the State of Maine, hereinafter designated as the land company; witnesseth:

" 'Whereas, the land company desires the railway company to construct and operate a line of electric street railway for the term of its charter from West Commerce street via said Commerce street to Seventeenth street, thence north to Zavala street, or if via Zavala street to their property known as Lake View; thence from Zavala north on West Nineteenth street to Woodbury avenue; thence along Woodbury avenue to West Balknap street; thence along West Balknap street to Highland Park; also from the junction of West Nineteenth and Zavala streets on Avon street and across lots to Bellevue avenue. The equipment of said railway to be equal to that employed on its other lines and the cars to be run in the same frequency as those operated upon the eastern end of West Commerce street.

" 'And whereas, the railway company is ready to undertake the construction and operation of the said line of street railway now, then, in consideration of the mutual covenants and agreements herein contained to be kept and performed by the parties hereto respectively, it is mutually agreed and covenanted as follows:

" 'Article I. The railway company agrees, obligates, and binds itself to begin the construction of the said line of railway as hereinbefore mentioned by September 15th, and will have the same completed by November 1, 1890, and thereafter operate the same, provided that they are not delayed in the beginning or progress of the work by municipal interference; and provided further, that should the railway company be prevented by the municipal authorities from occupying or constructing the said line of railway on the highways mentioned, in that event, it shall be excused from the performance of this contract. And provided also, that the acts of God or the public enemy shall excuse it from the performance of this contract by the day and date stipulated.

" 'Article II. The land company agrees, obligates, and binds itself to pay therefor the following considerations:

" 'First. Seventeen thousand five hundred ($17,500) dollars in lawful money of the United States, to be paid in the following manner:

" 'Three thousand five hundred ($3500) dollars on the signing of this instrument:

" 'Four thousand three hundred and seventy-five ($4375) dollars when the ties to be used in the construction of the track are laid on the line of the track:

" 'Four thousand three hundred and seventy-five ($4375) dollars when the track is laid and the necessary and convenient poles are set:

" 'Five thousand two hundred and fifty ($5250) dollars when the railway line is completed and has been in operation for (20) days. Also a donation of a certain parcel of land situated near the property known as Lake View, lying and being between West Commerce street and Zavala street, in the city of San Antonio, Texas, and known as Block No. 163, in range 4, district 5 or 7, containing twenty-four (24) acres or more of land, less one acre, which said one acre has been sold to one George Lane.

" 'Also four hundred and fourteen shares (414) of the capital stock of the Cross Town Railway Company, the same being a controlling interest in the Cross Town Railway Company, and the land company hereby guarantees that the said four hundred and fourteen shares of stock are free from all assessments levied to date by said Cross Town Railway Company, and also that there is no bonded or other indebtedness of any nature against the said Cross Town Railway Company, and that with the delivery of the said four hundred and fourteen shares, the said land company agrees, binds, and obligates itself to deliver to the railroad company all the property, real or personal, of the said Cross Town Railroad Company free from all debts, etc., together with all books, papers, contracts, etc. And said four hundred and fourteen shares of stock in the said Cross Town Railway Company shall be delivered to the railway company when the third cash payment herein provided for shall be due.

" 'The land company shall furnish simultaneously with the signing of this instrument a bond for title to the parcel of land hereinbefore referred to as block No. 163, the same is hereby made a part of this contract, conditioned, that after twenty (20) days operation of the line of street railway herein contemplated, it will make good and sufficient warranty deed to such person or persons, corporation or corporations, as the railway company may desire.

" 'Article III. Should the land company at any time after six months from the completion of the line of railway hereinbefore mentioned and within eighteen months (18) thereof desire that an additional line of railway shall be operated from Highland Park upon Highland avenue to Lake View avenue, and from Lake View avenue to Buckingham road, and from Buckingham road to Bellevue avenue to the junction of the terminus of the outlet of Avon street, the railway company agrees to operate the said additional line; provided that the land company shall pay for all material work for the entire construction as the same may be purchased and done by the railway company, and the railway company shall have the right to do the work and select and contract for the material and equipment, and upon completion of the said

additional line, it shall be the exclusive property of the railway company.'

"The road was constructed under the terms of the contract and the amounts were paid, but in July, 1894, the road was torn up and discontinued and damages are sought for such breach of the contract.

"Question. When appellant bought the land and appurtenances and above contract and other privileges belonging to the New England Land Company, did it obtain thereby the right to maintain a suit for damages for any breach of the contract that would have been held by its vendor, the New England Company?"

In their brief accompanying the certificate and in their oral argument before the court, counsel for appellee contended that the contract in question was not such as would "run with the land," but that question is not submitted by the Court of Civil Appeals; the question assumes that the appellant bought the contract, upon which fact the question is based. We understand that the question submitted involves the two following: 1. Did the purchase of the contract by a foreign corporation, before it procured a permit to do business in Texas, confer upon the purchaser the right to sue for damages arising out of the breach of that contract? 2. Is the contract such as by law may be assigned so as to give the assignee a right of action for its breach?

There is no law in Texas which prohibits corporations created in other States to purchase and hold land and personal property in this State, if authorized by their charters or the laws under which they were created. The charter of appellant conferred that power; therefore, the title to the land and contract vested in appellant. 6 Thomp. on Corp., sec. 7913. The purchase in this case was made outside of this State and did not constitute the "transaction of business within the State" as expressed in articles 745, 746, Revised Statutes. Security Co. v. Bank, 93 Texas, 575. The purchase of the land and contract under the facts alleged did not violate any law of Texas.

Article 308, Revised Statutes, is in these words: "The obligee or assignee of any written instrument not negotiable by the law merchant may transfer to another by assignment all the interest he may have in the same." The contract sued upon is a "written instrument not negotiable by the law merchant" and was therefore within the terms of the law. The statute is very general, but a proper construction would limit it so as not to include the classes of contracts which are by their terms or in their nature not assignable, as for service requiring professional skill and the like. La Rue v. Grovezinger, 84 Cal., 281; 18 Am. St. Rep., 179. There is nothing in this contract to indicate that it was limited to the parties making it either by its terms or by the subject matter of the contract, the character of the thing to be done, nor any other fact that would go to show that the parties intended it should not be assigned. We see no reason why the obligations of this contract could not be as well performed to any other owner of the lands mentioned as to the orig-

inal land company, and we are of opinion that the assignment would be effective under the general rule, independent of the statute. La Rue v. Grovezinger, supra; The Himrod F. Co. v. The C. & M. R. R. Co., 22 Ohio St., 451. The case last cited was very much like this. The railroad company entered into a contract with certain persons binding itself to grant to them certain privileges in freights and transportation of the products of their furnace, provided the obligees would construct and operate a furnace at a point upon the line of railroad. The obligees in the bond complied with the terms of the contract and then assigned it and sold the furnace property to the plaintiff in that suit. The railroad company declined to carry out the terms of the contract and the suit was instituted to recover damages. The issue was made that the contract was personal and not asignable, but the Supreme Court of Ohio held it to be assignable, reversing the judgment and remanding the cause.

We answer, the purchase of the contract, together with the lands, invested the appellant with all the rights which the original obligee in the bond would have had under the same circumstances.