(107 App. Div. 548.)

HUDSON RIVER WATER POWER CO. v. GLENS FALLS PORTLAND CEMENT CO. et al.

(Supreme Court, Appellate Division, Third Department. September 26, 1905.)

1. ASSIGNMENTS—CONTRACT ASSIGNABLE.

A contract whereby an electric company agrees to furnish a cement company with electrical power for a definite term is assignable by the cement company.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Assignments, § 25.]

2. CONTRACTS—BREACH—TERMINATION.

That each party to a contract is in default is not alone sufficient, in the face of the claim of each that the contract is in full force as against the other, to terminate the contract.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 1151.]

3. SAME.

Where an electrical company, which had contracted to furnish electrical energy to a cement company for a certain term, was not able to deliver electrical energy in accordance with the terms of its contract, it could not recover of the cement company for the breach of the contract by the latter.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 1207.]

4. SAME—CONTRACT TO FURNISH ELECTRICITY—PERFORMANCE.

An electrical company contracted to furnish a cement campany with electrical power. The contract provided that the cement company should have an equipment of motors and, transformers guarantied to have a power factor and efficiency "as high as any obtainable in the market." The manufacturers of the equipment which the cement company procured guarantied the apparatus "to be of our highest standard manufacture, both mechanically and electrically." Held, that this did not constitute sufficient performance of the terms of the contract.

5. SAME—SPECIFIC PERFORMANCE.

Under a contract to furnish electrical power to a cement company, an assignee of the cement company which had failed to procure the equipment required by the terms of the contract was not entitled to enforce specific performance thereof, notwithstanding a provision of the contract requiring the electrical company to keep available for use a specified amount of electrical energy, and a covenant on the part of the cement company to pay for the right to use the power so kept available.

6. SAME—TERM OF CONTRACT.

An electrical company contracted to furnish electrical power to a cement company for a term of five years, commencing three months after notice by the electrical company that it was ready to furnish such power, or at any time within the three months at which the cement company might notify the electrical company that it was ready to receive the power. Held that, where the electrical company gave the notice while it was still unable to supply the power, the five-year period did not commence to run.

7. PAYMENT — RECOVERY — MISTAKE.

Where an electrical company contracted to furnish electrical power for a term of five years, to be determined by notice from the electrical company, and the electrical company received payments under the contract, though the five-year term had not commenced, but while both parties believed it had commenced, the payments, being made under a mistake of fact, were properly recoverable from the electric company.

[Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Payment, §§ 272–281.]

Appeal from Special Term, Saratoga County.

Action by the Hudson River Water Power Company against the Glens Falls Portland Cement Company and the Glens Falls Gas & Electric Light Company. From the judgment, the plaintiff and the defendant the Glens Falls Gas & Electric Light Company appeal. Affirmed.

The action is one arising under a certain contract made between the plaintiff power company and the defendant cement company, bearing date the 7th day of February, 1901. At the time of the making of such contract the plaintiff was proposing to construct a dam and power house at Spier Falls for the purpose of the development, transmission, and sale of electricity and electrical energy. The contract in question provided that the power company will "keep available for use and supply to and for the cement company, on the premises of the cement company, in the town of Queensbury and state of New York, for the term of five years, electrical energy to the amount of seven hundred thirty-one and twenty-five hundredths (731.25) kilowatts, and such additional amount, not exceeding 731.25 kilowatts (making 1,462.50 kilowatts in all), as may be desired from time to time by the cement company. * * * The term of five years, during which electrical energy is to be supplied by the power company and paid for by the cement company as provided in this agreement, shall commence at the expiration of three months after the power company shall be able to deliver electrical power to its substation in regular service: provided, however, that the cement company may at its option, by written notice to the power company, elect to have said term of five years commence at any earlier time within three months after the power company shall be ready to deliver electrical energy as herein provided. * * * The cement company agrees to pay to the power company for the said term of five years for the right to use the first seven hundred thirty-one and twenty-five hundredths (731.25) kilowatts of electrical energy the sum of twenty-two thousand five hundred dollars ($22,500) per annum in equal monthly installments of one thousand eight hundred and seventy-five dollars ($1,875) each, on the 20th day of each month in each year during said term of five years." The contract also contains provisions by which the cement company agreed to pay the power company at the times and at the price specified therein for all electrical energy demanded by the cement company in excess of the first 731.25 kilowatts, whether the energy be used or not. The contract also contains the following provision: "The cement company further agrees that it will not use, in connection with the energy supplied by the power company, any apparatus except such as shall be of standard make, and have been purchased by it from some reputable manufacturer. All such motors and arc lamps shall be guarantied by such manufacturer to have a power factor as high as any obtainable in the market, and all such transformers shall be guarantied to have an efficiency as high as any obtainable in the market. At or before the time of installing any apparatus, the power company shall have opportunity to test the same for the purpose of ascertaining that its power factor or efficiency is equal to that guarantied; and any apparatus which shall be defective in this respect shall be rejected."

On the 29th day of September, 1902, the plaintiff served notice upon the defendant cement company that it was able to deliver electrical power to its substation in regular service under and in performance of the provisions of the aforesaid contract, and also able to deliver energy to said defendant as provided for in said contract, and that it would commence such delivery to the defendant cement company at the expiration of three months from that date, to wit, January 1, 1903, unless the defendant cement company exercised its option under the contract to have said delivery commence at an earlier date. On the 30th day of September, 1902, the defendant cement company, in response to the foregoing notice received by it on the preceding day, served notice upon the plaintiff that it elected under the terms of the contract to have delivery of the electrical energy by the plaintiff commence on the 1st day of October, 1902, at 10 o'clock a. m., and waived its right to postpone such delivery until January 1, 1903. On the 15th day of November, 1902, the defendant cement company by an instrument in writing assigned the contract to the de-

fendant light company, together with all its rights and privileges thereunder, and the light company accepted such assignment and agreed to perform the same in all respects on the part of the said cement company. On the 20th day of November, 1902, the defendant light company notified the plaintiff of such assignment and paid to the plaintiff the sum of $1,875, on the assumption that the five-year term under the contract had commenced on October 1, 1902, and on the 20th day of December, 1902, it also paid the plaintiff the further sum of $1,875, upon a like assumption, both being for monthly installments payable under such contract if such term had commenced, and the plaintiff accepted and retained each of said payments. On December 22, 1902, the plaintiff notified the cement company and the light company that the plaintiff claimed the contract was not assignable to the light company. The light company thereafter repeatedly requested the plaintiff to deliver power under the contract, and the plaintiff failed to do so. The light company refused to make a payment to the plaintiff under the contract on January 20, 1903, and this action followed.

In the complaint the plaintiff asked for judgment that the cement company had violated and refused to perform the contract; that the assignment of it to the light company was void, or, if valid, did not entitle the light company to any right to demand electrical energy for use in its business of lighting; that the cement company was still under obligations to take and pay for the energy in accordance with the contract; that plaintiff was under no obligations to deliver energy to either defendant; and also for damages against both defendants. The cement company answered, denying any breach of the contract, and demanded the dismissal of the complaint. The answer of the light company demanded specific performance of the contract between the plaintiff and the cement company, and set up a counterclaim for damages and also for the recovery of the moneys paid under the contract, if it should be determined that the term of the contract had not yet commenced.

The trial court decided that the plaintiff had no cause of action against the defendants, or either of them; that the agreement between the plaintiff and the cement company was terminated before the assignment of the contract by the defendant cement company to the defendant light company; that the light company had no right of action against the plaintiff for specific performance thereof, or for damages for a breach thereof; and that the light company was entitled to recover from the plaintiff the two sums of $1,875 paid under the contract, with interest from the time of such payment, and costs. From the judgment entered thereon the plaintiff and the defendant light company have appealed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Henry W. Williams (Edgar T. Brackett and Richard Lockhart Hand, of counsel), for appellant Hudson River Water Power Co.

Taylor, Anderson & Seymour (Howard Taylor, William B. Anderson, and Francis H. Kinnicutt, of counsel), for appellant Glens Falls Gas & Electric Light Company.

S. & L. M. Brown, for respondent.

CHESTER, J. This court decided upon a former appeal that the counterclaim interposed by the light company stated a cause of action. 90 App. Div. 513, 85 N. Y. Supp. 577, affirmed 178 N. Y. 611, 70 N. E. 1100. This decision materially limits the scope of our present inquiry.

Upon the former appeal, it is true, this court did not deem it necessary to determine the question whether the contract was assignable or not, yet in its opinion on that appeal it was said that the plaintiff "must be held to have accepted the light company as the party entitled to the

contract which it had executed originally with the cement company, unless there be something in the nature of the contract which renders it impracticable of performance with this assignee"; and it was said that no provision of the contract was found "which by fair interpretation cannot be adjusted to the use of any assignee of such power." While the conclusion that the plaintiff had accepted the light company as the party entitled to the contract might have been based upon the plaintiff's waiver of the right to insist otherwise, yet enough was said in the former opinion to indicate clearly that the court then thought, without so deciding, that the contract was assignable. For the reasons then given, which need not be repeated, we have no hesitation in now holding the contract to be assignable.

We are not satisfied that the trial court was correct in its conclusion that the contract was terminated or abrogated before its assignment to the defendant light company. It is entirely clear, from the correspondence between the parties, that each was trying to get the other in default under the contract. Yet, if both were in default, that would not alone be sufficient, in the face of the claim of each that the contract was in full force as against the other, to justify the conclusion that it had been terminated. There had been no election on the part of either party to it, or by the assignee, to treat the contract as terminated by reason of the breach thereof by the other; nor, with the exception of the failure of the plaintiff to furnish power to the light company on the ground of the alleged invalidity of its assignment, has there been any refusal to perform. The light company is not here insisting upon this breach to relieve it from further performance, but is insisting that, notwithstanding this refusal, the plantiff be compelled to perform. The plaintiff has all along insisted that the contract was in full force as against the cement company and that it could compel the cement company to take and pay for electrical energy under the contract. In its pleadings and upon the trial the plaintiff insisted that at the time it gave its notice, and ever since, it had the necessary power, and was ready to deliver it under the contract whenever the cement company had installed the proper apparatus, as required by the contract, for receiving it. Each of the defendants, too, have always insisted that the contract was in full force. That being so, it is entirely clear that there has never been any agreement between the parties to terminate it. The parties have concurred in one thing, at least, and that is in each trying to hold the other to a full performance of the contract. The attitude of the plaintiff in this respect continued long after the assignment of the contract to the light company; for the plaintiff received and retained two payments of monthly installments from the light company after the assignment had been made and after the plaintiff had full knowledge, not only of the assignment, but that the light company, by taking the assignment, had, under the terms thereof, made itself liable to perform the same in all respects. Under such circumstances there is nothing upon which to base the conclusion that the contract was terminated or abrogated prior to the assignment.

But, even if the contract has not been terminated and has been assigned to the defendant light company, these facts do not in our opinion af-

fect the correctness of the judgment appealed from; for neither party has shown itself entitled in this action to any further or different relief than has been there given.    The trial court found that neither on the 29th day of September, 1902, nor at any other time while said contract was in force, was the plaintiff able to deliver electrical power at its substation in regular service, or deliver power to the cement company as provided and contemplated in and by said contract; and it also found that on the 30th day of September, 1902, the defendant cement company was not, and has not since been, able to take or receive the electrical energy from the plaintiff under and in accordance with the terms and conditions of said contract.    The evidence in support of these findings is referred to in the opinion of the learned trial justice, and we need not detail it here.    It is enough for us to say that after carefully examining all evidence on the subject we regard it not only as sufficient to support, but as necessitating, such findings.    Under the first of these findings the complaint was properly dismissed, for the reason that the plaintiff had no cause of action against the defendants at the time it commenced its action.    Sherman v. Foster, 158 N. Y. 587, 53 N. E. 504.

The plaintiff was clearly not required to furnish electrical energy to the water rheostat installed by the cement company, for the contract provided that such energy should be furnished instead to transformers at the pressure specified therein.    The defendant light company claims that it has installed on the premises of the cement company motors and transformers in accordance with and guarantied as required by the contract.    This is disputed by the plaintiff, and the trial court has not found that such apparatus and transformers have been so installed and guarantied.    The contract required that the motors and transformers to be used in connection with the energy supplied should be guarantied by the manufacturers—the motors to have a "power factor," and the transformers to have an "efficiency, as high as any obtainable in the market."    In the contract under which the defendant light company purchased the motors and transformers which it claims meet the requirements of the contract, the manufacturers agree that the "apparatus named in this contract is guarantied to be of our highest standard manufacture, both mechanically and electrically."    It cannot be successfully contended that this guaranty comes anything near the requirement.    The mere inspection of the contract containing the requirement, and the one containing the guaranty, and comparing the one with the other, shows clearly that there has been a complete failure in this respect.

Manifestly, until the apparatus for receiving electrical energy has been installed on the premises of the defendant cement company as provided for by the contract, and has been guaranteed by the manufacturers thereof as required by such contract, the defendant light company is in no position to demand specific performance of the contract to deliver electrical energy.    This appears clear, notwithstanding the provision of the contract requiring the power company to "keep available for use" the specified amount of electrical energy, and the covenant therein on the part of the cement company to pay for the "right to use"

the power so kept available. The plaintiff having been unable to supply power in regular service at the time it gave the notice to the cement company that it was able so to do, it follows that the five-year period mentioned in the contract never commenced to run, and therefore that the light company was under no obligation to make the two payments to the plaintiff of monthly installments under the contract which it did on the false assumption that such period had commenced. These payments, having been made under a mistake of fact, were properly recovered by the defendant light company under its counterclaim against the plaintiff; but we think such light company has not shown itself entitled to any further relief against the plaintiff in this action.

The judgment should be affirmed, with costs to the defendant cement company against the plaintiff, and without costs to the other parties. All concur, except PARKER, P. J., not voting.