## VOIGT v. MURPHY HEATING CO.

ASSIGNMENTS—CONTRACTS—HEATING—REAL PROPERTY.

 A contract to heat an office building with steam at specified rates is assignable by the owner to a purchaser of the property.

Appeal from Wayne; Rohnert, J. Submitted January 11, 1911. (Docket No. 70.) Decided February 1, 1911.

Bill by Edward W. Voigt against the Murphy Heating Company to restrain the breach of a contract. From a decree for complainant, defendant appeals. Affirmed.

*Orla B. Taylor* and *Charles F. Delbridge*, for complainant.

*William H. Wetherbee*, for defendant.

MOORE, J. In August, 1906, Helen H. Newberry was the owner of a large office building in the city of Detroit. At this time defendant was in the business of furnishing steam from a central plant for heating purposes. The following contract was made:

"DETROIT, MICH., August 1, 1906.
"To Murphy Heating Company:
"The subscriber hereby requests and authorizes you to furnish steam for heating, into the premises at cor. Griswold and Larned Sts., now occupied by tenants as office building, and she agrees to use such steam so furnished by you to said premises and pay for the same at the rate of 50 cents per thousand pounds of condensation, measured by meter, subject to the following conditions:

"(A) It is understood and agreed that the total amount of the net bills rendered during any one year shall not exceed one thousand and sixty-five dollars ($1,065.00).

"(B) That if during the life of the contract created by the acceptance of this proposal and of any extension thereof, the rate charged by the Murphy Heating Company to any consumer in the neighborhood of the subscriber's premises, consuming as much or less (but not more) steam as the subscriber, shall be less than the rate above specified, viz., 50 cents per 1,000 pounds of condensation, then the subscriber's rate shall be reduced, and she shall pay no higher rate than that charged to such other consumer, notwithstanding the rate above specified.

"Rules and Regulations.

"(1) All bills shall be payable monthly at the office of the company.

"(2) The heating system proposed to be supplied with steam, including all pipes, radiators, valves, fittings and other appliances, shall be subject to inspection and approval of the company before steam will be supplied, and

the consumer shall at all times keep such pipes, radiators, valves, fittings and other appliances in proper repair and good working order.

"(3) No part of the system, including all pipes, valves, radiators, fittings and appliances of every kind, shall be changed or altered after connection is made, without the written approval of the company.

"(4) All meters and service valves, as well as all service lines from street mains to building, shall be furnished by and remain the property of the company.

"(5) The company shall, at all reasonable times, by its inspectors, agents and workmen, have right of free access into the premises supplied with steam for the purpose of examining or adjusting the whole or any part of the heating apparatus, or service line, or for the removal of or necessary repairs to any fixtures or property belonging to the company.

"(6) The company reserves to itself the right at any time to shut the steam from any consumer and cap the service pipe in case of abuse, fraud, or the violation of any of the terms of this contract.

"(7) The company may, whenever it shall deem it expedient, require security for the payment of steam expected to be consumed, or a deposit of a sum of money in advance to secure the company against loss.

"(8) The company shall not be liable for damage caused by interruption in the flow of steam when caused by strikes, accident or causes beyond its control, or on account of any defect or insufficiency of any pipe, radiator, valve fitting, or other appliance furnished by the consumer.

"(9) This request to establish services becomes a contract when accepted hereon by the proper officer of the company, and is intended to cover the period from the date of acceptance hereof to June 30th, 1911, and unless canceled by written notice from the subscriber to the Murphy Heating Company, thirty days before the expiration of the above specified term, shall be understood as a renewal of the contract for an additional period of five (5) years. Receipt of copy of this application is hereby acknowledged.

[Signed] "HELEN H. NEWBERRY, Subscriber, Owner,
"By T. H. NEWBERRY, Attorney.
"Accepted:  MURPHY HEATING COMPANY,
"By J. F. LEWIS, Superintendent."

In December, 1908, Helen H. Newberry sold the office building to the complainant, and assigned in writing the heating contract. The defendant caused the following letter to be sent to complainant:

"DETROIT, MICH., May 29, 1909.
"Mr. A. D. STANSELL,
          "14 Butler Bldg.,
                    "Detroit.
"*Dear Sir:*
    "We beg to inform you that after June 30th, 1909, we will furnish steam to the Equity Building on a strictly meter basis. As we have no contract with the owners of this building, we are inclosing blank contracts in duplicate, which we would ask you to have signed and returned to us.
                    "Very truly yours,
                    "MURPHY HEATING COMPANY."

The blank contract inclosed in the letter was an exact duplicate of the contract between Helen H. Newberry and the defendant, except the provisions found in (A) and (B) of the Newberry contract. The parties were unable to agree. The bill of complaint in this case was filed to restrain the defendant from refusing to furnish steam as provided in the Newberry contract. From a decree in favor of complainant the defendant has appealed.

Both parties are agreed that the sole question involved in this case is whether the heating contract between defendant and Mrs. Newberry was assignable, and passed, with all its benefits and privileges, to the complainant by virtue of her assignment thereof. The complainant insists it was assignable, while defendant insists it was of such a personal character as to be unassignable.

The solicitors for the respective parties argued the case at length orally, and have filed excellent briefs. We do not deem it necessary to comment at length upon the propositions presented by counsel, but content ourselves with saying that we think the case is ruled by the principles of law as stated in the last edition of the fifth volume of American and English Encyclopedia of Law and Prac-

tice, at pages 885, 886, and 906, and the many cases cited in the notes thereto. Justice STONE, before he became a member of this court, in a case tried before him, stated the rule applicable in this class of cases, so that his statement met the approval of this court, in the comparatively recent case of *Northwestern, etc., Lumber Co.* v. *Byers,* 133 Mich. 534 (95 N. W. 529).

The decree is affirmed, with costs.

BROOKE, McALVAY, and STONE, JJ., concurred with MOORE, J. BLAIR, J., concurred in the result.