THE LEADER COMPANY v. LITTLE ROCK RAILWAY & ELECTRIC COMPANY.

Opinion delivered October 4, 1915.

1. CONTRACTS—SUPPLY OF ELECTRICITY—WHEN ASSIGNABLE.—A contract to supply electricity to be used in a certain building for business purposes, which does not call for the exercise of personal services by either party, may be assigned.

2. WORDS AND PHRASES—CONTRACTS—"ASSIGNS."—When a contract is made with "F. S. & Co., and its successors or assigns," the use of the word "assigns" necessarily implies the right to assign the contract.

3. CONTRACTS—CONFLICTING PROVISIONS—LIGHTING CONTRACT—ASSIGNABILITY.—A contract to furnish electricity for lighting a business house was made to "F. S. & Co., and its successors or assigns," but a printed statement on the back of the contract provided that it should not be assigned, *Held*, under the rule when there are two repugnant provisions in a contract, the first will control, the term on the face of the contract will be given effect to, and the contract held to be assignable.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

*Comer & Clayton*, for appellant.

1. The use of the word "assigns" in a contract is sufficient to authorize an assignment of a contract otherwise not assignable without consent. 94 Ark. 461. The contract in this case is assignable, there being no provision to the contrary in the contract itself. 97 Ark. 513; 164 Mich. 539; 129 N. W. 701; 13 Wash. 502; 43 Pac. 328; 111 Pac. 326.

2. If the words, "This agreement is not transferable" appearing on the back of the contract, means that the contract is forfeited by an assignment thereof, it is in irreconcilable conflict with the prior provisions making it assignable, and is of no effect. 143 Fed. 750; 140 N. C.

262; 52 S. E. 758; 95 Wis. 111; 69 N. W. 354; 76 S. C. 297; 56 S. E. 964; 67 N. J. L. 665; 52 Atl. 467.

The contract was prepared on a printed form of the lighting company, and if conflicting in terms or doubtful in meaning, will be construed most strongly against the party who prepared it.   112 Ark. 1; 105 Ark. 519; 97 Ark. 522; 90 Ark. 256; 84 Ark. 431; 74 Ark. 41; 73 Ark. 338; 74 Ark. 41, 45; 101 Pac. 34.

*Rose, Hemingway, Cantrell, Loughborough & Miles,* for appellee.

1.   The contract contained the express provision, "This agreement is not transferable," and brings the contract within the rule laid down by the Supreme Court of the United States in *Arkansas Smelting Company* v. *Belden Company,* 127 U. S. 379.   That the use of the words "successors and assigns" in the contract in question does not make it assignable, see 59 Atl. 111.   These descriptive words can not be treated as a clause conflicting with the clause, "This agreement is not transferable," which is a specific clause controlling the descriptive words.

The courts uphold the right of parties to a contract to stipulate that it shall not be assignable.   152 U. S. 634; 72 Ark. 630.

2.   It is settled that where one party commits a breach of a contract the other party may elect to declare it at an end.   64 Ark. 228; 88 Ark. 422; 98 Ark. 160.

McCulloch, C. J.   The plaintiff (appellant) is a domestic corporation engaged in the mercantile business in the city of Little Rock, and the defendant, also a domestic corporation, is engaged in the business of furnishing electricity in said city for commercial and domestic uses. This is an action instituted by the plaintiff to restrain the defendant from increasing the price of electricity furnished to plaintiff's place of business and from shutting off the supply of current unless the plaintiff agrees to pay the increased rate.   The chancellor sustained a demurrer to the complaint and entered a decree dismissing the com-

plaint for want of equity, from which decree the plaintiff has prosecuted this appeal.

Plaintiff bases its right to relief in this action upon a contract entered into between its assignor, Froug, Smulian & Co. (a copartnership), and the Merchants' Lighting Company, the assignor of the defendant. Froug, Smulian & Co. were engaged in the mercantile business in the building in Little Rock now occupied by the plaintiff and entered into a contract with the Merchants' Lighting Company, which was then a competitor of the defendant, and furnished light on the terms specified in the contract. The portion of said contract which is material in this controversy reads as follows:

"Agreement entered into this 10th day of October, 1913, between the Merchants' Lighting Company, of Little Rock, Ark., a corporation under the laws of the State of Arkansas, its successors or assigns, hereinafter called the 'company,' and Froug, Smulian & Co., successors or assigns, hereinafter called the 'consumer.'

"The consumer requests the company, and the company agrees, in consideration of the agreements of the consumer hereinafter contained, and in accordance with its regular terms and conditions endorsed hereon, and which are hereby made a part of this contract, to furnish only to the premises at 222-224 Main Street all electric service for lighting, fans and heating required by the consumer, the present capacity being 10,000 watts, equal to .... watts connected, for periods of two years from commencement of service hereunder, until Froug, Smulian & Co. shall, thirty (30) days before the expiration of any period, terminate this agreement by written notice, also have privilege of renewal same rate for three years.

"The consumer shall pay the company for such electric service, within ten (10) days from date of bills, at the rate computed on the following basis, viz."

The contract was on a printed form, leaving only space for the names of the consumer, and contained printed stipulations on the back, concluding with the following: "This agreement is not transferable."

It is alleged in the complaint that Froug, Smulian & Co. sold and assigned to the plaintiff the stock of goods, fixtures, accounts and other choses of action pertaining to the said business in the city of Little Rock, including said contract with the Merchants' Lighting Company, and that said Merchants' Lighting Company had sold and assigned to the defendant all of its property and rights of all kinds, including said contract with Froug, Smulian & Co., and that the defendant assumed the performance of all of the contracts of said Merchants' Lighting Company. It is also alleged in the complaint that the plaintiff had tendered the amount due to the defendant under said contract, but that the defendant refused to comply with the contract and was about to shut off the current unless the plaintiff agreed to pay a largely increased rate.

Counsel for defendant insist that the plaintiff has no cause of action under said contract for two reasons: First, that the character of the service contemplated in the contract is such that renders the contract nonassignable. And, second, that the contract is not assignable according to the express terms thereof. On the other hand, it is insisted by counsel for plaintiff that the contract establishes obligations which are not inconsistent with its assignability, and that the terms of the written instrument constituted a contract beween the Merchants' Lighting Company and the successors and assigns of Froug, Smulian & Co., which is inconsistent with the subsequent stipulation that the contract should not be transferable, and that the latter stipulation is therefore void. Counsel have narrowed the controversy to those questions, and we do not undertake to decide anything else.

(1) We are of the opinion that the obligations created by the contract are not such as render it nonassignable. The obligations are not personal in the sense that it should be deemed to have been within the contemplation of the parties that there should be no assignment. The contract does not fall within the rule invoked by counsel for defendant that "when rights arising out of contracts are coupled with obligations to be performed by the con-

tractor, and involve such a relation of personal confidence that it must have been intended that the rights should have been exercised and the obligations performed by him alone, the contract, including both his rights and obligations, can not be assigned without the consent of the other party to the original contract." *Delaware County* v. *Diebold Safe & Lock Co.*, 133 U. S. 473; *Burck* v. *Taylor*, 152 U. S. 634. The contract is one to supply electricity to be used in a certain building, for business purposes, and there is nothing on either part which calls for the exercise of personal service. All that the consumer was required to do was to pay for the electricity. We conclude, therefore, that there is nothing in the nature of the contract which prevents it from being assignable. Other courts have held similar contracts to be assignable. *Voight* v. *Murphy Heating Co.*, 164 Mich. 539, 129 N. W. 701; *Minnetonka Oil Co.* v. *Cleveland Vitrified Brick Co.*, 27 Okla. 180, 111 Pac. 326; *Jenkins* v. *Columbia Land & Improvement Co.*, 13 Wash. 502, 43 Pac. 328.

(2-3) Now, as to the next contention that the stipulation on the back of the contract rendered the contract non-transferable, it will be observed that the face of the contract describes the contracting party as Froug, Smulian & Co. and its "successors or assigns, hereinafter called the consumer." The use of the word "assigns" necessarily implies the right to assign the contract. In *Fort Smith Light & Traction Co.* v. *Kelley*, 94 Ark. 462, we quoted with approval from Thornton on Oil and Gas, section 477, and certain other authorities, wherein the rule was laid down that "a grant to the company or its assigns is sufficient to authorize an assignment without further consent" of the other party to the contract. The use of the word necessarily means an obligation to furnish the electric current for use in the building named in the contract, not only to the parties named, but to their assigns. That interpretation of the language puts it in conflict with the stipulation printed on the back of the contract to the effect that the contract should not be transferable, and the case falls within the well established

rule that where there are two repugnant provisions in a contract the first will control and the last will be rejected. The fact that this stipulation is printed on the back of the contract and not in the face of it calls especially for the application of the above rule. Here the parties have, in the face of the contract itself, expressly stipulated for the furnishing of electricity to the parties named and their assigns, and it must be presumed that the contracting parties did not intend to defeat the obligation of that contract by a subsequent stipulation that there should be no assignment.

There was an answer filed, setting up matter which it is claimed amounted to an abandonment and a forfeiture of the contract by Froug, Smulian & Co. But we are not at liberty to look to the statements of the answer for the reason that the decision below was based entirely upon a demurrer to the allegations of the complaint.

Reversed and remanded, with directions to overrule the demurrer and for further proceedings.