## REO MOTOR CAR CO. v. GOAD MOTOR CO. et al. (No. 8312.)

Court of Civil Appeals of Texas. San Antonio.
Jan. 8, 1930.

Rehearing Denied Feb. 5, 1930.

Dodson & Ezell, of San Antonio, for appellant.

Charles R. Guinn and Hull & Oliver, all of San Antonio, for appellees.

SMITH, J. The Goad Motor Company, San Antonio dealers in Cadillac and La Salle automobiles, sold a Cadillac car to D. F. Youngblood at the price of $3,700. On June 19, 1928, the motor company and Youngblood entered into an oral agreement by which the latter resold and delivered the car to the former for a credit of $1,850 to be applied upon the purchase price of any other car selected by Youngblood from the company's stock. This agreement was evidenced by the following letter of confirmation, written by the company to Youngblood, and accepted by the latter:

"Goad Motor Company
"Lexington at Dallas
"San Antonio, Texas
"June 19, 1928.
"Mr. D. F. Youngblood, 4444 S. Presa St., San Antonio, Texas—Dear Mr. Youngblood: In line with our telephone conversation this A. M. we wish to confirm our verbal understanding relative to the sale of your 314 Cadillac Seven Passenger Sedan.

"We have set up a credit of $1,850.00 which you are at liberty to use against the purchase price of any Cadillac or La'Salle Automobile between now and October 1, 1928.

"We trust that you will find the above to be in order and in line with the agreement between you and our Mr. O. H. Taylor.

"Assuring that we are indeed grateful to you for this order, we are

"Sincerely Yours, H. P. Dotson,
"Vice President, Goad Motor Company."

Thereafter Youngblood purchased an automobile from the Reo Motor Car Company, of San Antonio, and as part payment therefor assigned said letter of credit to the Reo Company, which in turn assigned it to one J. V. Bell who tendered it to the Goad Motor Company as part payment of a new car purchased by him from said company. The latter refused to allow Bell any credit on account of said assigned instrument, or to recognize the same as an obligation on its part to the assignee. Bell then in turn assigned the contract to the Reo Company. On the same day the Goad Company brought this suit against the Reo Company, Youngblood, Bell, and another, seeking to cancel said credit memorandum, upon allegation that each of the defendants was claiming some sort of interest in said instrument, and plaintiff did not know who the true owner was. It was further alleged that the credit memorandum was given Youngblood on account of peculiar, personal and confidential relations with him, and was therefore not assignable by him; that the car turned in by Youngblood to the company in consideration of said credit of $1,850 required repairs before it could be resold for said amount; and that the company made such repairs, which, with commissions and other expenses incident to the same, amounted to $429, leaving a balance upon said credit of $1,371, which the company tendered into court to be paid over to the defendant adjudged by the court to be the true owner of said credit. The company also sought to recover attorneys fees in the sum of $250, together with costs.

In a jury trial judgment was rendered decreeing the Reo Company to be the owner of the credit memorandum, and awarding it the amount of said credit (plus an additional item of $100 conceded to be due it), less the offset of $429 claimed by the Goad Company. The Reo Company has appealed.

The credit memorandum had all the force and effect of any other written contract, and should be enforced according to its expressed provisions, in the absence of allegations and proof of fraud, accident, or mistake in its execution, or ambiguity in its language. There were no allegations or proof of such infirmities in this instance. There were no allegations or proof that the amount of credit extended Youngblood in the memorandum was to be reduced by the cost of repairs to be made upon the returned car, or by any commission to be allowed the company upon its resale. The contract was, simply, that Youngblood would be allowed a credit of $1,850 upon the current list price of any car he should choose from appellee's stock; that he could purchase such car by surrendering the memorandum to the company and paying in cash the difference between $1,850 and the list price. Such an offer was made by Bell, acting for the assignor, the Reo Company, and rejected by appellee. By this course it became liable to the assignee for the amount of the credit. The jury finding that Youngblood knew, "at the time he traded in his car to appellee, that repairs had to be made on same in order for the Goad Motor Company to sell it and allow him $1,850 for the same on the purchase price of a new automobile," does not affect the case, since Youngblood did not assume to bear the expense of those repairs, or guarantee the resale price of the car.

The credit memorandum was assignable, under the Negotiable Instruments Act (article 569, R. S. 1925), which provides that "the obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another." There was no provision in this instrument which either expressly or impliedly prohibited its assignment, nor did the rights of the parties thereto involve any personal confidence or trust, or the giving of credit, which would affect its assignability. Packard North Texas Motor Co. v. Franklin Motor Co. (Tex. Civ. App.) 299 S. W. 692. The fact urged by appellee that the latter took in Youngblood's car partly in order to satisfy a dissatisfied purchaser does not affect the assignability of the credit memorandum given by appellee to the purchaser in the transaction. It was given unqualifiedly without restriction as to its assignability. The case cited is in point, and is conclusive upon the question of assignability.

Appellee contends that by assigning the contract Youngblood thereby repudiated it, but we do not understand such to be the legal effect of assignment. We think the act of assignment amounted to an affirmation, rather than repudiation, of the contract.

The judgment is reversed, and judgment is here rendered that appellant recover upon its cross-action against appellee the sum of $1,950, with interest thereon from September 8, 1928, and all costs of suit.