### CENTRAL POWER & LIGHT CO. v. PURVIS.

#### No. 9193.

Court of Civil Appeals of Texas. San Antonio.

Jan. 4, 1934.

Rehearing Denied Feb. 7, 1934.

Louthan & Carroll, of San Benito, and Frank M. Kemp, J. M. Wilson, and L. L. Lentz, all of Corpus Christi, for appellant.

Seabury, George & Taylor, of Brownsville, for appellee.

SMITH, Justice.

The Central Power & Light Company is a public utilities corporation engaged in furnishing electric power and light to users in Cameron and other counties. In extending its power lines to consumers, it purchased a right of way over a certain 40-acre farm in Cameron county, then owned by one Cromack. At the same time, and in part consideration for the granting of the right of way to it, the company agreed to "furnish electric power" to Cromack as the owner of the land, as evidenced by the following letter, dated September 24, 1927, and acknowledged for registration and recorded by the company officials:

"Mr. Bert Cromack, Brownsville, Texas

"Dear Sir: In consideration of your granting the Central Power and Light Company an easement, or right-of-way on Lot 'B,' Block No. 162, San Benito Land and Water Company Subdivision of Concepcion de Carricitos Grant, the Company agrees to furnish you electric power at the prevailing rate within a reasonable time after six months from the date hereof, provided you will notify this company sixty days prior to the time you want to use this power. This notice must be written.

"Very truly yours,
"Central Power & Light Company
"F. C. Ludden, District Mgr."

On November 20, 1930, Cromack conveyed said land, and assigned said contract to furnish power, to A. E. Purvis and J. Scott Brown. Brown then conveyed and assigned his right in the land and agreement to Purvis, who still owns the same.

Subsequently, apparently in 1930, Purvis began negotiations with representatives of the company to obtain power service, and later, on August 15, 1931, made written demand upon the company for this service, as follows:

"Central Power and Light Company, San Benito, Texas

"Gentlemen: We are moving to farm by first of coming month having rented our place here. Will want electricity for following by that time:

"Frigid Air

"Washing Machine

"Electric Iron and Sweeper, Toaster, Radio and electric blankets.

"all of above serviced by 110 volt. Will try and dispose of electric range and heater.

"Please do not disappoint us as we have been waiting on you people for service for quite a while, almost one year."

When finally called upon to furnish the promised service, the company refused to perform and Purvis then brought this suit, first, for specific performance, and, second, and in the alternative, for damages. The trial court ordered specific performance, and the company has appealed.

The contract in question was made in behalf of the company by one Ludden, thereunto apparently fully authorized. The negotiations leading up to the refusal of appellant to perform were initiated when Cromack and his assignee, Purvis, called on Ludden to make demand for service under the contract. It appears that Cromack had mislaid his copy of the contract and accordingly informed Ludden that the instrument had been lost, whereupon Ludden told him that "when he found this letter he would probably find a clause in there that when this line was put on a paying proposition he would give him electricity," and thereupon "promised to send a man out there and see if we could make it a paying proposition, and wanted me (appellee) to try to help influence those people," but did not do so, although he, or those acting under and for him, made an unsuccessful effort to purchase a subsidiary plant for temporary use in carrying out the provisions of the contract. At about that time appellee made the written demand, and called at Ludden's office in prosecution thereof. Ludden was not in his office, but one Kennedy, the agent apparently in charge and familiar with the facts of the case, discussed the matter with appellee and finally told him that "the only thing we (the Company) could do is to pay you off." By such process the negotiations were terminated.

■ The appeal presents the major question of whether the agreement of appellant to furnish electric power to Purvis, the then owner of the premises to be served and assignee of the right to such service, is of such nature as to render it assignable by Cromack to his successors in title. We have concluded that the contract is assignable and that appellee, as his assignee, succeeded to all Cromack's rights thereunder.

The right to assign written contracts in this state is provided by statute in the blanket provision that "the obligee or assignee of any written instrument not negotiable by the law merchant, may by assignment transfer all his interest therein to another." Article 569, R. S. 1925. This provision is obviously all-inclusive upon its face, but the courts now uniformly exclude from its operation contracts in matters of personal trust or skill. The rule was comprehensively stated by Judge Stayton for the Commission of Appeals in Dittman v. Baking Company, 271 S. W. 75, 77, as follows:

"The general rule in modern times is that all contracts are assignable. Necessary exceptions, for which defendant contends, are readily seen and uniformly recognized. They arise on account of suretyship; technical guaranty; personal relationship, as between master and servant; personal skill or services, as in such a case, or that of an attorney for his client; personal terms of contract, as where a particular obligee is made the measure of performance, the agreement is to supply what he 'needs,' or he is to be 'satisfied'; or confidence or trust, as from lender toward borrower—it being everywhere conceded that in such instances a man has a right to choose the individuals with whom he will deal. But, saving exceptions of these kinds, the full and unexceptional liberty of restricting alienation of contractual rights has given way, in so far as any case like the one at bar is concerned."

■■ We are of the opinion that the contract here in question is not within the exceptions stated. It provides for a simple service common to the ordinary affairs of life, and which, presumably, appellant furnishes to thousands of subscribers in every walk and station in life. It constitutes appellant's stock in trade and imposes upon it an obligation which it could perform as well to appellee as to the original obligee or any other owner of the premises to be supplied. All the obligee was required to do was to pay for the electricity to be furnished, and it is a matter of common knowledge that public service corporations, such as appellant, have ample and universally enforced methods of securing and collecting such charges, as well as remedies in cases of default. There is nothing in the contract, or the consideration or circumstances of its execution, to indicate any intention of the parties that it should not be assigned, and, in the absence of both expressed and implied prohibition against assignment, and of the qualities which would bring it within the recognized exceptions to the statute, the right to assign should be presumed. 5 Tex. Jur. pp. 4, 9,

§§ 3, 7; Dittman v. Baking Co., supra; Lakeview Land Co. v. Traction Co., 95 Tex. 252, 66 S. W. 766; Houston & T. C. Ry. v. Cluck, 31 Tex. Civ. App. 211, 72 S. W. 83, 86; Goad Motor Co. v. Reo Motor Co. (Tex. Civ. App.) 24 S.W.(2d) 67; Leader Co. v. Ry. & Elec. Co., 120 Ark. 221, 179 S. W. 358; Hudson River Water Power Co. v. Glens Falls Portland Cement Co., 107 App. Div. 548, 95 N. Y. S. 421; Voigt v. Heating Co., 164 Mich. 539, 129 N. W. 701.

█ Appellant bases its claim that this contract is an exception to the statute, chiefly upon the contention that its effect would be to create an obligation to extend credit to the obligee, but we are not impressed with that contention. The primary obligation of a public utility corporation is to furnish its service to all persons connected with its facilities, upon the usual and customary terms and conditions exacted by it of its subscribers. And while it is true that the measure of the subscriber's liability is determinable in the future, month by month, or in such periods as the company elects, according to the service utilized by the subscriber, the company can, according to common usage, protect itself against loss by exacting a cash deposit to cover the estimated probable consumption of its product during such period. Such usage is universal, so much so that it is a matter of common knowledge that public utilities corporations do not extend credit to the great masses of consumers, but exact security of them by the means stated. This contract, therefore, did not involve the question of personal credit within the contemplation of the exception to the statute permitting assignment.

█ Appellant contends that the obligation assumed by it to "furnish electric power" to the contractee is not a covenant running with the land, and this contention seems to be well founded. But appellee does not and need not depend upon this quality in the contract to render it enforceable, but depends, rather, upon the express agreement therein to perform the obligation in question. The proposition, therefore, is immaterial to this decision and will be overruled for that reason.

██ The element of time in the contract was covered by the provision that appellant "agrees to furnish you electric power * * * within a reasonable time after six months from the date hereof, provided you will notify this Company sixty days prior to the time you want to use this power." Appellant contends that the "reasonable time" stipulated for related to the time of demand for service, and not to the time the service was to be furnished after demand, and that as nearly four years elapsed between the date of the contract and the date of demand, the latter came too late. In short, that the obligee failed to make the demand within a reasonable time within the contemplation of the agreement, and thereby forfeited his right to make it at all.

A majority of this court construe the stipulation for reasonable time as appellant construes it, that is, that it relates to the time for making the demand; while this writer is inclined more to the opinion that it relates, rather, to the time for furnishing the service after demand; that is, that the stipulation means that appellant shall have a reasonable time after demand, in which to furnish service. At most the meaning of the provision is doubtful, and therefore could be resolved against appellant, who put it in the language of its own selection. Be that as it may, however, there was no evidence adduced upon the question of reasonable time, and appellant offered none thereon, and therefore cannot set it up as a defense. Certainly there is nothing in the record to show, as a matter of law, that appellee did not make his demand within a reasonable time, under all circumstances of the case.

In this connection it is deemed appropriate to decide the related contention of appellant that the contract is too indefinite and uncertain in its terms to be binding upon appellant, or to support an action for or decree of specific performance. This contention is based upon numerous objections to the instrument, which need not be noticed in detail.

█ It should be observed at the outset that when called upon to perform the contract, appellant raised none of the objections urged thereto in this suit. On the contrary, appellant's authorized official set up only one obstacle in the way of its performance and that was that the contract embraced a stipulation that the company would not be required to furnish the service unless or until the line called for "was put on a paying proposition." As a matter of fact the contract embraced no such stipulation. But, on this false theory it appears that the company, through its agent, made an investigation to ascertain if the proposition could be made to "pay," and actually got prices upon a subsidiary plant with that in view. As a result of this investigation and effort, the company's representatives advised appellee that all it could do was to "pay him off." By this process appellant acknowledged its obligation to furnish the promised service, and ought not now be permitted to avoid

that obligation by questioning the sufficiency of the contract to bind it to a performance of the conditions thereof.

 Moreover, the contract is not deemed subject to the objections urged by appellant on this appeal. The action of the company officials in taking cognizance of the demand and undertaking to comply therewith cured any technical defects in the written notice of that demand, and its refusal to extend its line to the premises in question relieved appellee of any implied obligation to wire his premises in advance of such extension.

 The consideration for the extension of appellant's subsidiary line to the premises had already been paid appellant through the granting of the easement across the premises; appellant had appropriated the easement to its own uses and had constructed and put in operation and is still operating its "high lines" along that easement, so that appellee's assignor had fully performed the consideration for the contract. By this process appellant's obligation to extend its line to the premises became absolute, and until it has done so, or tenders performance thereof, it cannot quibble about the character or amount of current to be consumed by appellee, or the terms or manner of payment therefor. The contract fixes the price to be paid for the current at the "prevailing rate" charged by appellant of its subscribers, which is no more or less than it could charge under the law, for that matter.

 The contract and demand thereunder do not appear to present any practical difficulties which ought to render them unenforceable. By them appellant is primarily obligated, simply, to extend lateral lines from its main lines to the improvements on appellee's premises, sufficient in capacity to operate the heat and light facilities plainly designated in the written application made therefor by appellee, and not objected to by it as being unreasonable or not contemplated in the contract. When this is done, and appellee prepares his facilities to receive the electric current and satisfies the reasonable and customary demands of appellant as to terms of payment for the current at the prevailing rate, it will be appellant's further duty, under the law, if not under the specific provisions of the contract, to turn on the current and maintain the service as long as appellee pays for it in the manner prescribed.

 The contract is easily susceptible of this interpretation, and should be specifically enforced accordingly. Such enforcement should not require such minute or constant or continuing supervision or direction of a court as to render a decree therefor untenable or invalid. It may be invoked by one simple order, which the parties must regard so long as it stands.

The judgment is affirmed.

On Motion for Rehearing.

 Appellant has filed a motion to dismiss the cause, upon the ground that appellee has moved his family from the premises to be served. The motion will be overruled, with the suggestion that the judgment, being for specific performance, is a continuing one, which remains under the control of the trial court, to be modified, suspended, set aside, or enforced as the circumstances of the case and parties may be made known to the trial court.

Appellant's motion for rehearing will likewise be overruled.